WISE, Judge.
 

 The appellant, Joseph Clifton Smith, appeals the summary dismissal of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P. In 1998, Smith was convicted of murdering Durk Van Dam during the course of a robbery, an offense defined as capital by § 13A-5-40(a)(2), Ala.Code 1975. The jury, by a vote of 11 to 1, recommended that Smith be sentenced to death, and the circuit court sentenced Smith to death. Smith’s conviction and his sentence of death were affirmed on direct appeal.
 
 Smith v. State,
 
 795 So.2d 788 (Ala.Crim.App.2000), cert. denied, 795 So.2d 842 (Ala.), cert. denied, 534 U.S. 872, 122 S.Ct. 166, 151 L.Ed.2d
 
 *15
 
 118 (2001). We issued the certificate of judgment on March 16, 2001.
 

 In September 2002, Smith filed a Rule 32 petition. The circuit court summarily dismissed the petition after finding that it was untimely filed.
 
 [1]
 
 We affirmed the circuit court’s dismissal without an opinion.
 
 Smith v. State,
 
 897 So.2d 1246 (Ala.Crim.App.2003) (table). On certiorari review the Alabama Supreme Court reversed this Court’s judgment and held that Smith’s postconviction petition was timely filed. See
 
 Ex parte Smith,
 
 891 So.2d 286 (Ala.2004). The case was remanded to the circuit court and Smith was allowed to amend his petition.
 

 On remand, Smith filed amended petitions in June 2004 and again in January 2005. In March 2005, the circuit court granted the State’s motion to dismiss. Smith filed a notice of appeal. We dismissed the appeal after finding that the notice of appeal was not timely filed.
 
 Smith v. State,
 
 926 So.2d 1095 (Ala.Crim.App.2005) (table). Smith then filed a second Rule 32 petition seeking an out-of-time appeal from the denial of his first Rule 32 petition. That Rule 32 petition was granted, and this appeal is an out-of-time appeal from the denial of Smith’s first Rule 32 petition.
 

 We stated the following facts surrounding the murder in our opinion on direct appeal:
 

 “The State’s evidence tended to show the following. On November 25, 1997, police discovered the badly beaten body of Durk Van Dam in his mud-bound Ford Ranger truck in a wooded area near Shipyard Road in Mobile County. Dr. Julia Goodin, a forensic pathologist for the Alabama Department of Forensic Sciences, testified that Van Dam died as a result of 35 different blunt-force injuries to his body. Van Dam had marks consistent with marks made by a saw on his neck, shoulder, and back; he also had a large hemorrhage beneath his scalp, brain swelling, multiple rib fractures, a collapsed lung, multiple abrasions to his head and knees, and defensive wounds on his hands. Dr. Goodin testified that the multiple rib fractures that caused one lung to collapse were probably the most immediate cause of death.
 

 “Smith gave two statements to the police. In the first statement he denied any involvement in the robbery-murder but said that he was with Larry Reid when Reid beat and robbed Van Dam. Smith denied taking anything from the victim. When police were questioning Reid, Smith repeatedly knocked on the interrogation room door and requested to talk to the officer who had taken his first statement. In his second statement Smith admitted that he and Reid had planned to rob Van Dam because they had been told that Van Dam was carrying $1,500 in cash. Smith said that he, Reid, and Van Dam left the Highway Host motel in Van Dam’s red truck on November 23,1997. Van Dam was driving. Reid directed Van Dam, who had been drinking, to an isolated location. Once there, Reid began hitting Van Dam. He said that when Reid kicked Van Dam in the face he thought Van Dam was dead. Smith said that Van Dam then got up and Smith hit him on the head with his fist, kicked him in the ribs several times, threw a handsaw at him, and may have hit him with a hammer but he wasn’t entirely sure because he suffers from blackouts. Reid then got a power saw from the back of Van
 
 *16
 
 Dam’s truck, Smith said, and ran the saw against Van Dam’s neck. Smith held Van Dam down while Reid took the money from his pockets. Smith and Reid then attempted to move the truck, because they had planned to steal it, but it got stuck in the mud. Smith also admitted that he took the victim’s boots, because his shoes were wet, and that he took the victim’s tools. The two discussed where to take Van Dam’s body and Smith suggested that they take it to a nearby lake. However, they left the body, Smith said, under a mattress near Van Dam’s truck. Smith said that when they divided the money he got only $40 and Reid kept the rest, approximately $100. Smith also told police that he had just been released from custody on Friday — two days before the robbery-murder on Sunday.
 

 “Russell Harmon testified that on November 23, 1997, he went to the Highway Host motel and saw Reid and Smith. He said that Smith told him that they were going to rob Van Dam and asked if he wanted to join them. Harmon declined and left the motel. Later that day he went back to the motel to see if the two had been successful with their plans. He said that Smith told him that he had beaten the victim on the head and that he had cut him with a saw. On cross-examination he admitted that he could not swear that Smith was the one who said he had cut Van Dam in the back but that it could have been Reid who made this statement. However, on cross-examination Harmon reiterated that Smith told him that he ‘hit the man, beat the man — hit the man in the head and cut him.’ (R. 340.) Harmon testified that Smith asked him to go with him to get the tools from where he had left them in the woods. He said that he went with Smith and that they got the tools and took them to a pawnshop— Smith received $200 for the tools. Harmon testified that he was currently in the county jail because his probation had been revoked.
 

 “M.A. testified that she was living at Highway Host motel with her mother and sister at the time of Van Dam’s murder. She said that her sister, M., was dating Smith. M.A. testified that on November 23, 1997, she saw Smith, Reid, and Van Dam drive away from the motel in a red truck. She said that when Smith and Reid returned sometime later they were in a black car, Van Dam was not with them, and Smith had blood on his clothes. M.A. testified that Smith told her that he had hit, cut, and stabbed Van Dam in the back.”
 

 Smith,
 
 795 So.2d at 796-97.
 

 Standard of Review
 

 This is an appeal from the denial of a postconviction petition — a proceeding initiated by Smith. Rule 32.3, Ala.R.Crim.P., states, in part: “The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitled the petitioner to relief.”
 

 In the direct-appeal proceedings we reviewed Smith’s capital-murder trial and sentencing proceedings for plain error. See Rule 45A, Ala.R.App.P. However, the plain-error standard of review does not apply to the review of postconviction proceedings challenging a death sentence. See
 
 Ex parte Dobyne,
 
 805 So.2d 763 (Ala.2001). We review the denial of a postcon-viction petition under an abuse-of-discretion standard. See
 
 Elliott v. State,
 
 601 So.2d 1118 (Ala.Crim.App.1992). “Abuse of discretion” has been defined as: “An appellate court’s standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupport
 
 *17
 
 ed by the evidence.”
 
 Black’s Law Dictionary
 
 11 (8th ed. 2004).
 

 Also, the procedural bars contained in Rule 32 apply to all cases, even those challenging a capital-murder conviction and death sentence. See
 
 Hunt v. State,
 
 940 So.2d 1041 (Ala.Crim.App.2005);
 
 Hooks v. State,
 
 822 So.2d 476 (Ala.Crim.App.2000);
 
 State v. Tarver,
 
 629 So.2d 14 (Ala.Crim.App.1993).
 

 I.
 

 Smith first argues that the circuit court erred in summarily dismissing his claim that he is mentally retarded. He asserts that he is mentally retarded and that his sentence of death violates the United States Supreme Court’s holding in
 
 Atkins v. Virginia,
 
 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Smith further contends that he is entitled to an eviden-tiary hearing on this issue because, he says, the circuit court erroneously relied on evidence presented at his trial concerning his IQ score. Smith asserts that a clinical psychologist testified at his sentencing hearing that Smith’s IQ placed him in the bottom 2% of all adults and that the “margin of error” in IQ testing would place his IQ below 70.
 

 The State argues that Smith failed to plead sufficient facts showing that his mental functioning was consistent with the definition of mental retardation adopted by the Alabama Supreme Court in
 
 Ex parte Perkins,
 
 851 So.2d 453, 456 (Ala.2002). Specifically, it asserts that Smith failed to plead any facts to show that he suffered from “subaverage intellectual functioning” or “deficit adaptive functioning.” Neither, it asserts, did Smith “plead any facts showing his IQ was 70 or less.” Indeed, it contends that Smith did not even plead his IQ score in his second amended petition.
 

 In
 
 Atkins v. Virginia,
 
 the United States Supreme Court held that it was cruel and unusual punishment in violation of the Eighth Amendment to execute a mentally retarded individual.
 
 [2]
 
 However, the Supreme Court left it to the individual states to define mental retardation. Though Alabama has yet to enact legislation addressing this issue, the Alabama Supreme Court in
 
 Perkins
 
 held that a defendant is mentally retarded if he or she: (1) has significantly subaverage intellectual functioning (an IQ of 70 or below); (2) has significant defects in adaptive behavior; and (3) these two deficiencies manifested themselves before the defendant attained the age of 18.
 

 In addressing this claim, the circuit court made the following findings:
 

 “Smith contends that he is mentally retarded and, thus, his execution would violate the Eighth Amendment as interpreted by
 
 Atkins v. Virginia,
 
 [536 U.S. 304] (2002) .... In his first and second amended Rule 32 petitions, Smith attempts to support this contention by pointing out that in junior high school he was classified as ‘Educable Mentally Retarded.’ Smith also contends, without any citations to the trial record, that ‘[t]here was testimony at sentencing showing his inability to adapt.’ The only difference in the
 
 Atkins
 
 claim in Smith’s first amended petition and the
 
 Atkins
 
 claim in his second amended petition is the addition of one paragraph. ... Smith argues that he is mentally retarded as it is defined by ‘the AAMR publication Mental Retardation: Definition, Classification, and Systems of Support ([10]th Ed. [2002]).’ The Court finds, however, that the
 
 Atkins
 
 claim ... is no
 
 *18
 
 more factually specific than that
 
 Atkins
 
 claim in Part III of his first amended Rule 32 petition.
 

 [[Image here]]
 

 “Smith’s school records indicate he had a full scale IQ of 74 at age 12. (S.R. 383) Before trial Dr. [James] Chudy administered the WAIS-R on Smith to assess his intellectual abilities. Chudy indicated in his report that ‘[o]n the WAIS-R [Smith] earned a Verbal IQ of 73, a Performance IQ of 72, and a Full Scale IQ of 72.’ (C.R. 400) Chudy also testified during the penalty phase of Smith’s trial that he ‘did not find a pattern that would show that [Smith] had major neurological problems that would be inconsistent with a 72 IQ.’ (R. 796) The evidence admitted at Smith’s trial refutes any assertion that Smith’s intellectual functioning is significantly subaverage. Smith proffers no facts in his second amended Rule 32 petition that would in any way dispute the facts contained in the record.
 

 “Likewise, the record indicates little, if any, deficits in Smith’s adaptive functioning. While reviewing the evidence of flight on direct appeal, the Alabama Court of Criminal Appeals found that:
 

 “ ‘[T]he evidence indicated that Smith and Reid attempted to hide the body under a mattress, and tried to steal [the victim’s] truck but it got stuck in the mud and they left it behind, and that Smith went back to the Highway Host motel to shower and to change clothes. [Smith] admitted to police that he tried to wipe his fingerprints off the truck and also told police that he had washed the clothes he was wearing at the time of the robbery-murder. Also, when [Smith] was first questioned about the murder he denied any involvement and placed the blame for the robbery-murder on Reid. ... All of the conduct evidences a “consciousness of guilt” on the part of Smith.”
 

 “Smith v. State,
 
 795 So.2d at 829. ... Smith’s actions after the murder ‘indicate that [Smith] does not suffer from deficits in his adaptive behavior.’
 
 Ex parte Smith,
 
 [[Ms. 1010267, March 14, 2003] — So.3d - (Ala.2003) ]. Based on Smith’s complete failure to proffer any new facts in his second amended Rule 32 petition to dispute the facts presented at his trial, the Court finds ‘that [Smith], even under the broadest definition of mental retardation, is not mentally retarded.’ .
 
 Ex parte Perkins,
 
 851 So.2d at 456. The Court finds that the allegation in Part II of Smith’s second amended Rule 32 petition is without merit; therefore, it is denied. Rule 32.7(d), Ala.R.Crim.P.”
 

 (C.R. 427-30.)
 

 First, we agree with the circuit court that Smith failed to meet his burden of pleading in regard to this claim. In
 
 Boyd v. State,
 
 913 So.2d 1113 (Ala.Crim.App.2003), we stated the following concerning a Rule 32 petitioner’s burden of pleading:
 

 “ ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.’
 
 Boyd v. State,
 
 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if true, entitle[s] the petitioner to relief.’
 
 Lancaster v. State,
 
 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitles a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim.P., to present evidence proving those alleged facts.”
 
 *19
 
 913 So.2d at 1125. “The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis must be included in the petition itself.”
 
 Hyde v. State,
 
 950 So.2d 344, 356 (Ala.Crim.App.2006). Rule 32.6(b), Ala.R.Crim.P., states:
 

 “The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
 

 Smith pleads only conclusions concerning his mental health and does not even indicate his IQ score in his pleading. The only grounds offered in support of this claim were the following:
 

 “Mr. Smith has deficiencies in all three of these adaptive areas and clearly meets the mental retardation set forth in
 
 Atkins.
 

 “As evidenced by his school records and the testimony at trial, both his sub-average intellectual functioning and inability to adapt manifested themselves before Mr. Smith turned 18. Therefore, Mr. Smith meets the three requirements under the
 
 Atkins
 
 test for mental retardation and imposition of the death penalty on him violates the Eighth and Fourteenth Amendments to the United States Constitution, the Alabama Constitution and Alabama law.”
 

 (C.R. 75.) Clearly Smith failed to satisfy the pleading requirements of Rule 32.6(b), Ala.R.Crim.P.
 

 Moreover, the record in Smith’s direct appeal supports the circuit court’s conclusion that Smith does not meet the broadest definition of mentally retarded adopted by the Alabama Supreme Court in
 
 Ex parte Perkins,
 
 851 So.2d 453 (Ala.2002).
 
 [3]
 

 Intellectual functioning.
 
 The record shows that before Smith’s trial he was evaluated by Dr. James Chudy, a clinical psychologist. Dr. Chudy performed IQ tests on Smith and determined that Smith’s verbal IQ was 73, his performance IQ was 72, and his full-scale IQ was 72. Dr. Chudy diagnosed Smith as suffering from the following disorders: major depression, post-traumatic stress disorder, alcohol dependence, learning disorder, personality disorder, and borderline intellectual functioning. Dr. Chudy also testified that because of the margin of error in IQ testing Smith’s IQ score could be as high as 75 or as low as 69. Smith’s mother, Glenda Smith, also testified that Smith has dyslexia.
 
 [4]
 

 Smith’s school records were also introduced at his sentencing hearing. These records show that Smith was administered an IQ test when he was 12 years of age. At that time Smith’s verbal IQ was 80, his performance IQ was 72, and his full-scale IQ was 74. The school recommended that Smith participate in regular classes. However, the records show that the next year another school recommended that Smith be placed in special-education classes after he was classified as “educable mentally retarded.” Smith had also been administered an IQ test in 1979 when he was eight
 
 *20
 
 years of age. At that time, Smith scored a verbal IQ of 80, a performance IQ of 73, and a full-scale IQ of 75. (Trial record, supp. C.R. 393.)
 

 Adaptive behavior.
 
 “Adaptive skills are those skills that one applies to the everyday demands of independent living, such as taking care of oneself and interacting with others.”
 
 State v. White,
 
 118 Ohio St.3d 12, 885 N.E.2d 905, 908 (2008). The American Psychiatric Association,
 
 Diagnostic and, Statistical Manual of Mental Disorders,
 
 39 (4th ed. 2000), defines adaptive functioning as “how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in them particular age group, sociocultural background, and community setting.”
 

 Smith and Larry Reid committed the robbery/murder on November 25, 1997. Just days before the murder Smith had been released from prison on prediscre-tionary leave — a program that allowed him to live at home and to work in the community. Smith had been living with his mother in a trailer park. The manager of the trailer park told the probation officer who conducted the presentence investigation that Smith did odd jobs for her around the trailer park, that he was a hard worker, and that she had never had any complaints about him. In Smith’s statement to police he referenced his girlfriend. Also, M.A., a State’s witness at Smith’s trial, testified that at the time of the robbery/murder Smith was dating her sister. Smith also told police that both he and his codefen-dant, Larry Reid, planned to rob the victim, and that, after the victim was killed, he suggested that they dispose of the body in a nearby lake and that he pawn the tools that he had taken from the victim. Smith’s prison records showed that he frequently went to the infirmary to obtain medical attention for different ailments. Also, a review of Smith’s statement to police does not indicate that Smith lacked the ability to communicate or to interact with others. There is no indication that Smith had significant defects in adaptive behavior. The record does not show that Smith meets the broadest definition of mentally retarded adopted by the Alabama Supreme Court in
 
 Perkins,
 
 and Smith pleaded no new evidence in support of this claim.
 

 In summary, Smith urges this Court to adopt a “margin of error” when examining a defendant’s IQ score and then to apply that margin of error to conclude that because Smith’s IQ was 72 he is mentally retarded. The Alabama Supreme Court in
 
 Perkins
 
 did not adopt any “margin of error” when examining a defendant’s IQ score. If this Court were to adopt a “margin of error” it would, in essence, be expanding the definition of mentally retarded adopted by the Alabama Supreme Court in
 
 Perkins.
 
 This Court is bound by the decisions of the Alabama Supreme Court. See § 12-3-16, Ala.Code 1975. As one court noted concerning the margin of error in IQ tests as it related to a federal regulation:
 

 “We find the reasoning in
 
 Bendt [v. Chater,
 
 940 F.Supp. 1427 (S.D.Iowa 1996) ], and its reliance on
 
 Cockerham v. Sullivan,
 
 895 F.2d 492, 495 (8th Cir.1990), to be most persuasive.
 
 Ellison v. Sullivan,
 
 929 F.2d 534 (10th Cir.1990). In
 
 Bendt,
 
 the district court noted that ‘incorporating a 5 point measurement error into a claimant’s IQ test results would effectively expand the requisite IQ under listing 12.05(C) from test scores of 60 to 70 to test scores of 60 to 75.’
 
 Bendt,
 
 940 F.Supp. at 1431. The Court concluded that this would alter the range of IQ’s which satisfy the Listing of Impairments for Mental Retardation and Autism in contradiction of the
 
 *21
 
 federal regulations interpreting the Act.”
 

 Colavito v. Apfel,
 
 75 F.Supp.2d 385, 403 (E.D.Pa.1999). The circuit court did not abuse its discretion in dismissing this claim.
 

 II.
 

 Smith next argues that he was denied the effective assistance of counsel at both phases of his capital-murder trial. He asserts that the circuit court erroneously confused the burden of pleading with the burden of proof and that he is entitled to an evidentiary hearing on his claims because, he argues, he met his burden of pleading “a clear and specific statement of the grounds upon which relief is sought.”
 
 [5]
 

 To prevail on a claim of ineffective assistance of counsel the petitioner must show: (1) that counsel’s performance was deficient and (2) that the petitioner was prejudiced by the deficient performance. See
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 

 “Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.”
 

 Strickland,
 
 466 U.S. at 689.
 

 “ ‘ “This court must avoid using ‘hindsight’ to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel’s actions before determining whether counsel rendered ineffective assistance.” ’
 
 Lawhorn v. State,
 
 756 So.2d 971, 979 (Ala.Crim.App.1999), quoting
 
 Hallford v. State,
 
 629 So.2d 6, 9 (Ala.Crim.App.1992). ‘[A] court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance.’
 
 Strickland,
 
 466 U.S. at 689, 104 S.Ct. 2052.”
 

 A.G.
 
 v. State,
 
 989 So.2d 1167, 1171 (Ala.Crim.App.2007).
 

 In
 
 Hyde v. State,
 
 950 So.2d 344 (Ala.Crim.App.2006), we stated the following concerning a petitioner’s burden of pleading claims of ineffective assistance of counsel:
 

 “The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to re
 
 *22
 
 lief, the petitioner has not satisfied the burden of pleading under Rule 32.S and Rule 32.6(b). See
 
 Bracknell v. State,
 
 883 So.2d 724 (Ala.Crim.App.2003). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’
 
 Strickland v. Washington,
 
 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
 

 950 So.2d at 355-56.
 

 First, we note that when addressing several of Smith’s claims of ineffective assistance the circuit court stated in its order that a finding of no plain error on direct appeal foreclosed a finding of prejudice under
 
 Strickland v. Washington.
 
 However, the cases relied on by the circuit
 
 court
 
 —Woods
 
 v. State,
 
 957 So.2d 492 (Ala.Crim.App.2004), and
 
 Taylor v. State,
 
 10 So.3d 1037 (Ala.Crim.App.2004)—were subsequently overruled and reversed, respectively, by the Alabama Supreme Court in
 
 Ex parte Taylor,
 
 10 So.3d 1075 (Ala.2005). In
 
 Taylor,
 
 the Supreme Court held:
 

 “[although it may be the rare case in which the application of the plain-error test and the prejudice prong of the
 
 Strickland [v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ] test will result in different outcomes, a determination on direct appeal that there has been no plain error does not automatically foreclose a determination of the existence of the prejudice required under
 
 Strickland
 
 to sustain a claim of ineffective assistance of counsel.”
 

 Taylor,
 
 10 So.3d at 1078. The circuit court issued its order before the Alabama Supreme Court released its opinion in
 
 Taylor.
 
 Also, the circuit court gave alternative reasons for denying relief on the majority of the claims. Moreover, we may affirm the circuit court’s ruling denying a Rule 32 petition if it is correct for any reason.
 
 McNabb v. State,
 
 991 So.2d 313 (Ala.Crim.App.2007);
 
 Hall v. State,
 
 979 So.2d 125 (Ala.Crim.App.2007).
 

 A.
 

 Smith first argues that his trial counsel was ineffective, in part, because of the “grossly inadequate compensation” paid to appointed attorneys who represent indigent capital-murder defendants in Alabama. See § 15-12-21, Ala.Code 1975.
 
 [6]
 

 Smith made only a general claim in his second amended petition that counsel was ineffective because of the inadequate compensation paid to court-appointed attorneys in capital cases. Smith cited no specific instance where counsel’s performance was ineffective based on the statutory cap. “The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis must be included in the petition itself.”
 
 Hyde v. State,
 
 950 So.2d 344, 356 (Ala.Crim.App.2006). Thus, Smith failed to meet his burden of pleading in regard to this claim.
 
 *23
 
 See Rule 32.6(b), Ala.R.Crim.P. As we stated in
 
 McNabb v. State,
 
 991 So.2d 313, 320 (Ala.Crim.App.2007):
 

 “[S]ummary denial of this claim was proper because, as the circuit court found, McNabb failed to meet his burden of pleading sufficiently or with specificity facts to support his claim.
 
 See, e.g., Duncan v. State,
 
 925 So.2d 245 (Ala.Crim.App.2005) (summary denial of claim that counsel was ineffective as a result of inadequate compensation was proper where petitioner failed to allege how counsel’s performance would have been different had the statutory compensation scheme been different).”
 

 Also, on direct appeal this Court specifically addressed the substantive issue underlying this claim and found no error. We addressed the issue under the preserved-error standard of review. Counsel cannot be held ineffective for failing to raise an issue that has no merit. See
 
 Davis v. State,
 
 9 So.3d 539 (Ala.Crim.App.2008) (opinion on remand from the Alabama Supreme Court).
 

 B.
 

 Smith next argues that his trial counsel’s investigation was deficient because the cap the circuit court placed on funds for the investigator counsel retained was too low.
 

 The circuit court made the following findings:
 

 “This is not a case where a defense attorney’s request for funds to hire an investigator was denied. The trial court granted Smith’s, trial counsel up to $1000 to hire an investigator. Nothing in the record on appeal indicates the trial court limited trial counsel from requesting additional funds if they thought they were necessary. In addition to receiving funds for a private investigator, Smith’s trial counsel also requested and received $1500 for a mental health expert who testified during the penalty phase of trial. Further, the Court finds that Smith’s trial counsel did, in fact, present the testimony and evidence proffered in Part I.K(l) of Smith’s second amended petition during the penalty phase of his trial. Smith fails to proffer in Part I.B of his second amended Rule 32 petition any specific beneficial mitigating evidence his trial counsel could have discovered and presented if they had requested and received more funds for a private investigator. See
 
 Thomas v. State,
 
 766 So.2d 860, 892 (Ala.Crim.App.1998) (holding that ‘claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result’) (emphasis added). The Court finds that the allegation in Part I.B of Smith’s second amended Rule 32 petition is without merit; therefore, it is denied. Rule 32.7(d), Ala.R.Crim.P.”
 

 (Supp. C.R. 388-90.)
 

 First, Smith failed to meet his burden of pleading in regard to this claim. Smith merely states in his petition that “[i]f trial counsel had been given the funds necessary to hire someone to conduct a complete mitigation investigation, they would have uncovered a wealth of mitigating evidence, which the jury never heard.” (C.R. 23.) Smith does not plead what mitigating evidence was not discovered because of the alleged cap on fees. Smith failed to comply with the pleading requirements of Rule 32.6(b), AIa.R.Crim.P.
 

 Second, the record of Smith’s trial supports the circuit court’s findings. The record shows that Smith filed a pretrial motion for funds to hire an investigator and a psychologist. That motion was granted. The circuit court allowed $1,000 for an
 
 *24
 
 investigator and $1,500 for a psychologist. There is no indication that Smith was foreclosed from filing a request for additional funds for the investigator he retained. This claim is not supported by the record.
 

 C.
 

 Smith next argues that counsel’s assistance was ineffective because counsel failed to adequately investigate the capital-murder charges against him. Smith lists many grounds in support of this claim.
 

 “A review of a claim of ineffective counsel is not triggered until the petitioner has identified specific acts or omissions.
 
 Strickland.
 
 See, e.g.,
 
 Nelson v. Hargett,
 
 989 F.2d 847, 850 (5th Cir.1993) (claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result).”
 

 Thomas v. State,
 
 766 So.2d 860, 892 (Ala.Crim.App.1998), overruled on other grounds,
 
 Ex parte Taylor,
 
 10 So.3d 1075 (Ala.2005). “ ‘ “[A] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.” ’
 
 State v. Flynn,
 
 190 Wis.2d 31, 48, 527 N.W.2d 343 (Ct.App.1994).”
 
 State v. Hickles,
 
 296 Wis.2d 417, 722 N.W.2d 399 (2006).
 

 1.
 

 Smith first argues that counsel was ineffective for not interviewing his family members and presenting their testimony at the penalty phase of his trial.
 

 When denying relief on this claim, the circuit court made the following findings:
 

 “In
 
 Thomas v. State,
 
 766 So.2d 860, 892 (Ala.Crim.App.1998), the Alabama Court of Criminal Appeals held that ‘claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result.’ In
 
 Woods v. State,
 
 [957 So.2d 492 (Ala.Crim.App.2004) ], the Alabama Court of Criminal Appeals reviewed the circuit court’s summary dismissal of Woods’s postconviction claim that his defense counsel were ineffective for failing to interview members of his family. The Alabama Court of Criminal Appeals held that the circuit court’s holding that Woods’s allegation did not meet the specificity and full factual pleading requirements of Rule 32.6(b) was correct and adopted the circuit court’s findings that ‘Woods failfed] to identify any family member by name, proffer what their testimony would have been at trial, or argue why such testimony would have caused a different result at the penalty phase or at sentencing.’
 
 Id.
 

 “If the specificity and factual pleading requirements of Rule 32.6(b) mean anything, certainly they would require a postconviction petitioner, or his counsel, to identify for a court reviewing a Rule 32 petition (sic) to name the witnesses a defense attorney should have interviewed and proffer what beneficial information the specific witnesses could have provided at trial. Smith fails to identify in Part I.C(l) of his second amended petition a single member of his family by name or proffer to the Court with any specificity what they would have testified about at trial. The Court finds that the allegation in Part I.C(l) fails to meet the specificity and full factual pleading requirements of Rule 32.6(b), Ala.R.Crim.P. See
 
 Coral v. State,
 
 [900 So.2d 1274 (Ala.Crim.App.2004) ] (holding that ‘[e]ach subcategory [of ineffec
 
 *25
 
 tive assistance of counsel] is an independent claim that must be sufficiently pleaded’). Therefore, this allegation is summarily dismissed.”
 

 (Supp. C.R. 391-93.) We agree with the circuit court. Smith failed to meet his burden of pleading in regard to this claim. Smith does not plead the name of any specific family member who failed to testify or plead what their specific omitted testimony would have consisted of. Rule 32.6(b), Ala.R.Crim.P.
 

 Furthermore, the record of Smith’s trial shows that three of Smith’s family members testified at the sentencing hearing— Smith’s mother and his two sisters. They all testified that Smith’s father was an alcoholic and that he was very abusive to Smith. It is clear that counsel did talk to Smith’s family members. This claim is not supported by the record.
 

 Moreover,
 

 “ ‘Prejudicial ineffective assistance of counsel under
 
 Strickland
 
 cannot be established on the general claim that additional witnesses should have been called in mitigation. See
 
 Briley v. Bass,
 
 750 F.2d 1238, 1248 (4th Cir.1984);
 
 see also Bassette v. Thompson,
 
 915 F.2d 932, 941 (4th Cir.1990). Rather, the deciding factor is whether additional witnesses would have made any difference in the mitigation phase of the trial.’
 
 Smith v. Anderson,
 
 104 F.Supp.2d 773, 809 (S.D.Ohio 2000), aff'd, 348 F.3d 177 (6th Cir.2003). ‘There has never been a case where additional witnesses could not have been called.’
 
 State v. Tarver,
 
 629 So.2d 14, 21 (Ala.Crim.App.1993).”
 

 McWilliams v. State,
 
 897 So.2d 437, 453 (Ala.Crim.App.2004), rev’d on other grounds in
 
 Ex parte Jenkins,
 
 972 So.2d 159 (Ala.2005). “We cannot say that trial counsel’s performance was deficient simply because he did not call every witness who conceivably may have been willing to testify at the sentencing phase of the trial.”
 
 Bui v. State,
 
 717 So.2d 6, 22 (Ala.Crim.App.1997).
 

 2.
 

 Smith next argues that counsel was ineffective for failing to locate two critical eyewitnesses. Specifically, he asserts that counsel failed to locate a unknown male who drove Smith and his codefendant to their hotel after the murder and failed to locate a clerk of a convenience store who allegedly sold Smith cigarettes immediately after the robbery/murder.
 

 When denying relief on this claim, the circuit court stated:
 

 “In
 
 Thomas v. State,
 
 766 So.2d [860] at 893 [ (Ala.Crim.App.1998) ], the Alabama Court of Criminal Appeals held that ‘[a] claim of failure to call witnesses is deficient if it does not show what the witnesses would have testified to and how that testimony might have changed the outcome.’ Smith’s use of the term ‘eyewitness’ in his second amended petition is misleading. There is nothing in the trial record, and Smith proffers no facts in his second amended Rule 32 petition, that would raise any inference anyone other than Smith and his code-fendant were eyewitnesses to the victim being beaten to death. Further, Smith fails to identify in his second amended Rule 32 petition either of these individuals by name or proffer to the Court with any specificity what these unnamed witnesses would have testified about[;] instead Smith makes the completely con-clusory argument that these witnesses ‘could have substantiated his statements to the police.’
 
 Id.
 
 Because Smith fails to proffer any specific facts to support these allegations, the Court finds that Part I.C(2) of Smith’s second amended Rule 32 petition fails to meet the specificity and full factual pleading require-
 
 *26
 
 merits of Rule 32.6(b). Therefore, these allegations are summarily dismissed.”
 

 (Supp. C.R. 393-94.)
 

 We agree with the circuit court. Smith failed to plead any facts in support of this claim. Smith did not plead the identity of the alleged omitted witnesses, what their testimony would have consisted of, or how he was prejudiced by their failure to testify. Thus, Smith failed to meet the pleading requirements of Rule 32.6(b), Ala. R.Crim.P.
 

 3.
 

 Smith next argues that counsel was ineffective for failing to introduce evidence that one of the State’s witnesses, M.A.,
 
 [7]
 
 was incarcerated at the time of his trial. He asserts that this was proof of the witness’s bias in favor of the State and that his counsel was ineffective for failing to introduce this evidence during M.A.’s testimony.
 

 Initially, we note that the record shows that counsel did attempt to question M.A. about where she was residing at the time of trial, but the circuit court granted the State’s motion to exclude this evidence. Smith’s claim is not supported by the record.
 

 Also, on direct appeal we devoted a great portion of our opinion to addressing the issue of whether the circuit court erred in not allowing Smith’s attorney to cross-examine M.A. about where she was living at the time of Smith’s trial.
 
 [8]
 
 When addressing the merits of this claim we stated: “[W]e emphasize that our affirmance of this issue is not dependent on application of the plain-error doctrine. The trial court’s ruling was not error, much less, plain error.” 795 So.2d at 817. Specifically we held that “the failure to allow M.A. to be questioned about the fact that her juvenile probation had been revoked was harmless.” 795 So.2d at 821. Because we found that the substantive issue underlying this claim was at best harmless, Smith cannot meet the prejudice prong of the
 
 Strickland
 
 test. As this Court stated in
 
 Gaddy v. State,
 
 952 So.2d 1149 (Ala.Crim.App.2006):
 

 “Harmless error does not rise to the level of the prejudice required to satisfy the
 
 Strickland
 
 test. As a Florida Court of Appeals aptly explained in
 
 Johnson v. State,
 
 855 So.2d 1157 (Fla.Dist.Ct.App.2003):
 

 “ ‘If the harmless error test ... has been satisfied, then it follows that there can be no prejudice under
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This is because of the fundamental difference between the harmless error test that is applied on direct appeal and the prejudice prong of
 
 Strickland.
 
 As the first district has explained:
 

 “ ‘ “Significantly, the test for prejudicial error in conjunction with a direct appeal is very different from the test for prejudice in conjunction with a collateral claim of ineffective assistance. There are different tests because, once a conviction becomes final, a presumption of finality attaches to the conviction. Thus, as
 
 Goodwin [v. State,
 
 751 So.2d 537, 546 (Fla.1999) ] explains, the test for prejudice on direct appeal is the harmless error test of
 
 Chapman v. California,
 
 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), under which trial court error will result in
 
 *27
 
 reversal unless the prosecution can prove ‘beyond a reasonable doubt’ that the error did not contribute to the verdict obtained. Conversely, however, as explained in
 
 Strickland,
 
 prejudice may be found in a collateral proceeding in which ineffective assistance of counsel is claimed only upon a showing by the defendant that there is a ‘reasonable probability’ that counsel’s deficient performance affected the outcome of the proceeding.” ’
 

 “855 So.2d at 1159, quoting in part
 
 Sanders v. State,
 
 847 So.2d 504, 506 (Fla.Dist.Ct.App.2003). See also
 
 Commonwealth v. Howard,
 
 538 Pa. 86, 645 A.2d 1300 (1994). Because the Supreme Court specifically held that the erroneous jury instruction was harmless error, Gaddy cannot show prejudice under
 
 Strickland.
 
 Relief was correctly denied on this claim.”
 

 952 So.2d at 1160. Accordingly, Smith failed to allege any facts that would entitle him to relief. See Rule 32.7(d), Ala. R.Crim.P.
 

 4.
 

 Smith next argues that counsel was ineffective during jury selection in failing to ensure that the jurors who were chosen for his trial were impartial. Specifically, he asserts that counsel failed to question the venire about possible mitigation, mental retardation, or child abuse.
 

 The circuit court found that this claim was insufficiently pleaded. We agree. Smith failed to plead any specific questions that could have been asked of the venire-members or how he was prejudiced by the failure to ask those questions. Smith failed to comply with the pleading requirements of Rule 32.6(b), Ala.R.Crim.P.
 

 5.
 

 Smith next argues that counsel was ineffective for failing to object to the admission of his confession. Specifically, he asserts that his confession should have been suppressed because his low IQ rendered him unable to make such a statement knowingly and intelligently.
 

 The circuit court found that the underlying claim had no merit because we addressed the issue on direct appeal and found no error. On direct appeal we stated:
 

 “Mental subnormality is but one factor to consider when reviewing the totality of the circumstances surrounding a confession.
 

 “Here, ‘[e]ven considering evidence of the defendant’s mental subnormality[,] which was not before the trial judge when he ruled on the admissibility of the statements, the defense testimony “does not show that [the defendant] was so mentally deficient that he was incapable of being able to make a knowing and intelligent waiver.” ’
 
 Whittle v. State,
 
 518 So.2d [793] at 797 [ (Ala.Crim.App.1987) ], quoting
 
 Sasser [v. State],
 
 497 So.2d [1131] at 1134 [ (Ala.Crim.App.1986) ].”
 

 Smith v. State,
 
 795 So.2d at 810. Because the substantive issue has no merit, Smith’s counsel was not ineffective for failing to raise the issue at trial. See
 
 Davis,
 
 supra.
 
 [9]
 

 6.
 

 Smith argues that counsel was ineffective for failing to formulate and argue any theories of defense. Specifically, he asserts that counsel failed to argue that
 
 *28
 
 Smith lacked the “intent and ability to formulate the plan which led to Mr. Van Dam’s death” and failed to argue any viable theory of defense in his opening and closing statements.
 

 The circuit court made the following findings on this claim:
 

 “Smith fails to cite in paragraph 48 of his second amended petition to any specific portion of Dr. Chud/s report in which Chudy opined Smith lacked the ability to formulate a plan to rob and murder the victim. Further, on direct appeal, the Alabama Court of Criminal Appeals held that:
 

 “ ‘[T]he evidence indicated that Smith and Reid attempted to hide the body under a mattress, and tried to steal [the victim’s] truck but it got stuck in the mud and they left it behind, and that Smith went back to the Highway Host motel to shower and to change clothes. [Smith] admitted to police that he tried to wipe his fingerprints off the truck and also told police that he had washed the clothes he was wearing at the time of the robbery-murder. Also, when [Smith] was first questioned about the murder he denied any involvement and placed the blame for the robbery-murder on Reid. ... All of the conduct evidences a “consciousness of guilt” on the part of Smith.’
 

 “Smith v. State,
 
 795 So.2d at 829 (emphasis added). When reviewing the trial court’s finding that Smith did not act under the domination of his codefendant, the Alabama Court of Criminal Appeals held that:
 

 “ ‘The trial court stated that the “record is devoid that [Smith] on November 23, 1997, acted under the domination of Larry Reid or anyone else.” This finding is also supported by Smith’s admissions to police. Smith said that both he and Reid planned to rob [the victim], that [Smith] suggested that they dispose of the body in a nearby lake, and that [Smith] took the tools to the pawnshop. Smith did not state in his statements that Reid threatened him if he told anyone about the robbery-murder. The court’s failure to find this as a mitigating circumstance is supported, by the record.’
 

 “Id.
 
 at 839 (emphasis added). Based on the findings of the trial court and the Alabama Court of Criminal Appeals, this Court finds that the allegation in paragraph 48 of Smith’s second amended Rule 32 petition is without merit. Rule 32.7(d), Ala.R.Crim.P.
 

 [[Image here]]
 

 “Smith’s entire argument in Part I.G(l) of his second amended Rule 32 petition consists of the allegation his trial counsel did not set forth or argue a ‘viable theory of defense’ in his opening statement or closing argument. Smith fails, however, to state in his second amended petition with any specificity what viable theory his defense trial counsel could have presented during his guilt phase opening statement or in his guilt phase closing arguments that would have been so compelling it might have change the outcome of the guilt phase. Smith proffers no facts in Part I.G(l) of his second amended petition that, if true, would establish ‘if trial counsel had presented a different opening statement [or closing argument], the result of the trial would have been different.’
 
 Callahan v. State,
 
 767 So.2d 380, 397 (Ala.Crim.App.1999) Smith does not even point to one example of inconsistent testimony by State witnesses that would support Part I.G(l). The Court finds that the allegations in Part I.G(l) of Smith’s second amended peti
 
 *29
 
 tion fail to meet the specificity and full factual pleading requirements of Rule 32.6(b), Ala.R.Crim.P.; therefore, they are summarily dismissed.”
 

 (Supp. C.R. 402-04.) The circuit court’s findings as to this issue are supported by the record, and we adopt them as part of this opinion.
 

 Moreover, counsel argued at Smith’s trial that Smith had no specific intent to commit capital murder and that, at most, Smith intended to commit only a robbery. This theory was consistent with Smith’s statement to police. “ ‘[T]he mere existence of a potential alternative defense theory is not enough to establish ineffective assistance based on counsel’s failure to present that theory.’
 
 Rosario-Dominguez v. United States,
 
 353 F.Supp.2d [500] at 513 [ (S.D.N.Y.2005) ].”
 
 Hunt v. State,
 
 940 So.2d 1041, 1067 (Ala.Crim.App.2005).
 

 7.
 

 Smith argues that counsel was ineffective for failing to move that Judge Chris Galanos recuse himself from presiding over his trial. Specifically, he asserts that Judge Galanos was the district attorney when Smith pleaded guilty to a separate burglary offense in 1990 and that he therefore should not have presided over his 1998 capital-murder trial.
 

 The circuit court found that the underlying issue had been addressed on direct appeal and determined adversely to Smith. This Court stated: “ ‘It was held in
 
 Ray v. State,
 
 398 So.2d [774 at] 776-777 [ (Ala.Crim.App.1981) ], that the fact that the trial judge, before he was a judge and while he was district attorney of the particular circuit, had prosecuted the defendant in another case presented no valid ground for a motion that he recuse himself.’ ”
 
 Smith,
 
 795 So.2d at 804, quoting
 
 James v. State,
 
 423 So.2d 339, 341 (Ala.Crim.App.1982). Thus, Smith failed to state a claim upon relief could be granted. See Rule 32.7(d), Ala.R.Crim.P.
 

 8.
 

 Smith next argues that counsel failed to object to numerous instances of prosecuto-rial misconduct. Specifically, he asserts that counsel failed to object when the prosecutor commented on a statement made by his codefendant, Larry Reid, and that counsel failed to object when the prosecutor called Smith a liar and a thief.
 

 On direct appeal we addressed the underlying issues supporting this claim. We held that the prosecutor’s reference to Smith’s codefendant was an inadvertent slip of the tongue:
 

 “A review of the remark, together with the evidence presented at trial, shows that the prosecutor inadvertently misstated the name. The prosecutor said Larry instead of Jody. The contents of the remark reflect that the prosecutor was referring to Smith’s statement — not to any statement that his codefendant may have made to police. Clearly, this was an inadvertent slip of the tongue. We find no error, much less plain error, here.”
 

 Smith,
 
 795 So.2d at 825. Also, we found no -error in the prosecutor calling Smith a thief and a liar because the references were supported by the record: “Smith told police that he stole Van Dam’s tools and pawned them. By his own admission, he was a thief in November 1997 as the prosecutor said in his argument.”
 
 Smith,
 
 795 So.2d at 826. As for the reference that Smith was a liar, we stated that Smith denied any involvement in the murder in his first statement to police and then in his second statement admitted his participation in the robbery/murder. The references to Smith as a thief and a liar were in accord with the evidence admitted at trial and did not constitute improper argu-
 
 *30
 
 merits. Because the underlying issues have no merit, counsel was not ineffective for failing to object. See
 
 Davis,
 
 supra.
 

 Moreover,
 

 “[e]ffectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made. Effectiveness of counsel is not measured by whether counsel objected to every question and moved to strike every answer.”
 

 Brooks v. State,
 
 456 So.2d 1142, 1145 (Ala.Crim.App.1984).
 

 9.
 

 Smith argues that counsel was ineffective for failing to make a
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), objection after the prospective jurors were struck.
 

 In
 
 Batson,
 
 the United States Supreme Court held that it was a violation of the Equal Protection Clause to exclude black veniremembers from a black defendant’s trial based solely on race. In 1991, this holding was extended to white defendants in
 
 Powers v. Ohio,
 
 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Smith is white and was tried in 1998.
 

 We note that when denying relief on this claim the circuit court stated:
 

 “Smith raised the underlying substantive issue on direct appeal. On direct appeal Smith contended that ‘the strike list supports his motion to remand for a
 
 Batson
 
 hearing because it shows that 8 of the State’s 13 strikes were used to remove prospective black jurors.’
 
 Smith v. State,
 
 795 So.2d at 803. In rejecting Smith’s
 
 Batson
 
 claim, the Alabama Court of Criminal Appeals held that ‘[t]he record fails to raise an inference of racial discrimination.’
 
 Id.
 
 Smith proffers no additional facts in his second amended Rule 32 petition that were not before the trial court and considered by the Alabama Court of Criminal Appeals when it addressed this issue on direct appeal.”
 

 (Supp. C.R. 413.)
 

 The only ground that Smith pleaded in his petition was that the number of strikes the State used to remove black prospective jurors showed racial discrimination. In
 
 Hinton v. State,
 
 [Ms. CR-04-0940, April 28, 2006] — So.3d - (Ala.Crim.App.2006), we quoted with approval a circuit court’s order denying relief:
 

 ‘“[Also], this claim is dismissed for lack of specificity in accordance with Alabama Rule of Criminal Procedure 32.6(b) because Hinton fails to allege facts necessary to show that counsel could have proved a prima facie case in support of a
 
 Batson
 
 motion. The only specific allegation offered in support of what counsel could have stated in a
 
 Bat-son
 
 motion is that the State removed nine of the fourteen African-American veniremembers; however, Hinton presents no evidence in support of this allegation. Even so, a
 
 Batson
 
 motion based solely on the number of African-Americans removed from the venire will not prove a prima facie case of discrimination. See
 
 Ex parte Pressley,
 
 770 So.2d 143, 147 (Ala.2000).’ ”
 

 — So.3d at -. Thus, this claim was properly dismissed pursuant to Rule 32.6(b), Ala.R.Crim.P.
 

 10.
 

 Smith next argues that counsel was ineffective in inadequately investigating for the penalty phase of his capital trial. He raises several grounds in support of this claim.
 

 As we stated above:
 

 “A review of a claim of ineffective counsel is not triggered until the petitioner
 
 *31
 
 has identified specific acts or omissions.
 
 Strickland.
 
 See, e.g.,
 
 Nelson v. Hargett,
 
 989 F.2d 847, 850 (5th Cir.1998) (claims of failure to investigate must show with specificity what information would have been obtained with investigation, and whether, assuming the evidence is admissible, its admission would have produced a different result).”
 

 Thomas v. State,
 
 766 So.2d 860, 892 (Ala.Crim.App.1998), overruled on other grounds,
 
 Ex parte Taylor,
 
 10 So.3d 1075 (Ala.2005).
 

 a.
 

 First, Smith argues that his trial counsel failed to adequately investigate the mitigation evidence that was critical to his penalty-phase defense. Smith provides a laundry list of individuals whom he claims counsel should have interviewed. However, Smith did not plead the substance of each of the named individual’s alleged omitted testimony. Smith merely makes generalized assertions that counsel should have presented Smith’s “family and social history, employment history, educational history, and community and cultural influences.” (C.R. 56.)
 

 The circuit court made the following findings of fact on this claim:
 

 “Smith contends that ‘numerous [ ] family members, neighbors, and acquaintances were available to provide the mitigating information which was not included in the testimony presented.’ Smith then proffers to the Court a laundry list of individuals that, he contends, his trial counsel should have interviewed. In paragraph 87 of his first amended Rule 82 petition, Smith listed 10 individuals that, he contends, his trial counsel should have interviewed and presented during the penalty phase. In paragraph 87 of his second amended Rule 32 petition, Smith lists 26 individuals. Despite listing 16 more individuals, Smith proffers the identical ‘facts’ in paragraphs 88-103 of his second amended petition as he proffered in paragraph 88-103 of his first amended petition.
 

 “In
 
 Waters v. Thomas,
 
 46 F.3d 1506, 1514 (11th Cir.1995) (en banc), the Eleventh Circuit held that ‘[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove, ineffectiveness of counsel.’ Further, in
 
 Thomas v. State,
 
 766 So.2d 860, 893 (Ala.Crim.App.1998), the Alabama Court of Criminal Appeals held that ‘[a] claim of failure to call witnesses, is deficient if it does not show what the witnesses would have testified to and how that testimony might have changed the outcome’ ... Smith fails to proffer in his first amended Rule 32 petition or in his second amended Rule 32 petition what a particular witness would have testified about or argue how such testimony might have changed the outcome of the penalty phase of trial. Smith’s contention that his trial counsel were ineffective for failing to interview and present certain individuals without informing the Court what those individuals would have said or arguing how their testimony might have changed the outcome of trial is the epitome of a bare allegation. See
 
 Boyd v. State,
 
 746 So.2d 364, 406 (Ala.Crim.App.1999) (holding that ‘Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief) ... see also
 
 Coral v. State,
 
 [900 So.2d 1274 (Ala.Crim.App.2004) ] (holding that ‘[e]ach subcategory [of an ineffective assistance of counsel claim] is an independent claim that must be sufficiently pleaded.’).”
 

 
 *32
 
 (Supp. C.R. 414-16.) The circuit court’s findings are supported by the record.
 

 We have thoroughly reviewed the record of Smith’s trial. At the penalty phase, counsel presented the testimony of Smith’s mother, his two sisters, a longtime family friend, and a clinical psychologist who had evaluated Smith before trial. Smith’s mother, Glenda Smith, testified that Smith’s natural father, Leo Smith, drank heavily, that he was abusive to the whole family, and that he frequently beat Smith with any item he had near him. She said that after she divorced Smith’s father she married Hollis Luker. She testified that Luker was more abusive than Smith’s father and that at one time he hit Smith with a baseball bat and severely damaged one of Smith’s ears. Glenda Smith testified that she left Luker after he beat her with an axe handle. She said that Smith attended many schools, that he had a learning disability and was in special-education classes, and that he is dyslexic.
 

 Dr. James Chudy, a clinical psychologist, testified that he evaluated Smith before trial. He said that Smith’s verbal IQ was 73, his performance IQ was 72, and his full-scale IQ was 72. He said that it was his opinion that Smith suffered from depression, post-traumatic stress disorder, alcohol dependency, a learning disorder, and a personality disorder and that he had borderline intellectual functioning. He said that Smith was a follower and not a leader. It was his opinion that there was no evidence indicating that Smith’s mental health was related to any major neurological problems.
 

 Smith’s sister, Rebecca Smith, testified to the abuse the family suffered at the hands of Leo Smith and Hollis Luker and Smith’s frequent beatings. Lynn Harrison, Smith’s sister, also testified to the abuse the family suffered and that Luker was more abusive to her brothers.
 

 Shirley Stacey testified that she had known Smith and his family for 18 years. She said that she lived next to them when Glenda Smith was married to Hollis Luker. She testified that Luker frequently beat the children and that she witnessed some of the beatings. She also said that Smith was a “respectful child.”
 

 At the end of trial, the circuit judge stated for the record: “I would like to say that I applaud Mr. [Greg] Hughes and Mr. [Jim] Byrd for their diligence, professionalism and skill in defending Mr. Smith. What I asked you two gentlemen to do was not easy, but you have performed to the very best of your ability and I am grateful to you both.” (Trial record, R-21.)
 

 The record of the penalty phase shows that the alleged omitted evidence concerning Smith’s family history and education was presented in the penalty phase. Thus, the circuit court did not abuse its discretion in denying relief on this claim, b.
 

 Smith asserts that his trial counsel was ineffective for not obtaining the assistance of an neuropsychologist to conduct neurological testing on Smith.
 

 The circuit court made the following findings on this claim:
 

 “Nothing in [Dr. James] Chudy’s written report or in his trial testimony raises any inference that Smith would have been entitled to additional expert assistance or that his trial counsel were ineffective for failing to secure additional, expert assistance. See
 
 Ex parte Dubose,
 
 662 So.2d 1189, 1192 (Ala.1995) (holding that to be entitled to funds for expert assistance ‘[a] defendant must show a reasonable probability that an expert would aid in his defense and that at trial would result in a fundamentally unfair trial’); see also
 
 Chandler v. United States,
 
 218 F.3d [1305] at 1315 [ (11th
 
 *33
 
 Cir.2000) ] (holding that ‘for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take’). The Court finds that the allegations in Part I.K(2) of Smith’s amended Rule 32 petition are based entirely on speculation and conjecture and fail to meet the specificity and full factual pleading requirements of Rule 32.6(b), Ala.R.Crim.P.; therefore, they are summarily dismissed.”
 

 (Supp. C.R. 423-24.)
 

 Dr. Chudy testified that there was no evidence indicating that Smith’s mental health was related to any major neurological problems. Counsel is not ineffective for relying on an expert’s opinion. “‘Counsel is not ineffective for failing to shop around for additional experts.’
 
 Smulls v. State,
 
 71 S.W.3d 138, 156 (Mo.2002). ‘Counsel is not required to “continue looking for experts just because the one he has consulted gave an unfavorable opinion.”
 
 Sidebottom v. Delo,
 
 46 F.3d 744, 753 (8th Cir.1995).’
 
 Walls v. Bowersox,
 
 151 F.3d 827, 835 (8th Cir.1998).”
 
 Waldrop v. State,
 
 987 So.2d 1186, 1193 (Ala.Crim.App.2007). Thus, Smith is due no relief on this claim.
 

 c.
 

 Smith next argues that counsel was ineffective for failing to obtain the assistance of other experts. Smith argues that counsel should have obtained the services of a “substance-toxicologist, a psy-chopharmacologist, an expert in environmental exposure, and an expert in post-traumatic stress disorder.”
 

 The circuit court, in denying relief on this claim, stated:
 

 “Smith fails to identify for the Court in his second amended Rule 32 petition any individuals in the fields of expertise listed in Part I.K(3) or proffers to the Court what beneficial testimony these unnamed individuals would have provided at the penalty phase of Smith’s trial. The Court finds that the allegation in Part I.K(3) of Smith’s second amended Rule 32 petition fails to meet the specificity and full factual pleading requirements of Rule 32.6(b), Ala.R.Crim.P. See
 
 Boyd v. State,
 
 746 So.2d 364, 406 (Ala.Crim.App.1999) (holding that Rule 32.6(b) requires that the petition itself disclose the facts relief upon in seeking relief).”
 

 (Supp. C.R. 424-25.)
 

 We have held that a petitioner fails to meet the specificity requirements of Rule 32.6(b), Ala.R.Crim.P., when the petitioner fails to identify an expert by name or plead the contents of that expert’s expected testimony. See
 
 McNabb v. State,
 
 991 So.2d 313 (Ala.Crim.App.2007);
 
 Duncan v. State,
 
 925 So.2d 245 (Ala.Crim.App.2005). Smith failed to plead sufficient facts to satisfy the requirements of Rule 32.6(b), Ala. R.Crim.P.
 

 d.
 

 Smith argues that counsel was ineffective for failing to object to an improper jury instruction in the penalty phase concerning the weighing of the aggravating circumstances and the mitigating circumstances.
 

 The circuit court stated the following, when denying relief on this claim:
 

 “The record on appeal, however, establishes that trial counsel did, in fact, object to the above quoted instruction. ... As a result of trial counsel’s objection, the trial court recharged the jury concerning the burden of proof. After the trial court recharged the jury, trial counsel again logged an objection. The Court finds that the allegation ... is without merit because it is directly re
 
 *34
 
 futed by the record; therefore, it is denied.”
 

 (Supp. C.R. 425-26.) Smith’s claim is disputed by the record; thus, Smith is due no relief.
 

 III.
 

 Smith next argues that the circuit court erred in dismissing several of his claims after finding that those claims were procedurally barred by Rule 32.2, Ala.R.Crim.P.
 

 A.
 

 Smith asserts that the circuit court erred in dismissing his
 
 Batson v. Kentucky,
 
 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), claim and his sufficiency claim because they could have been, but were not, raised at trial or on direct appeal.
 

 The circuit court correctly found that Smith’s
 
 Batson
 
 claim was procedurally barred in this postconviction proceeding. See
 
 Boyd v. State,
 
 746 So.2d 364 (Ala.Crim.App.1999). Moreover, Smith’s sufficiency claim is procedurally barred in this postconviction proceeding. See
 
 Bass v. State,
 
 810 So.2d 802 (Ala.Crim.App.2001).
 

 B.
 

 Smith next argues that the circuit court erred in dismissing his
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), claim.
 

 The United States Supreme Court in
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), held that any fact which increases a punishment above the statutory maximum must be presented to a jury and proven beyond a reasonable doubt. This holding was extended to death-penalty cases in
 
 Ring.
 

 The circuit court stated the following concerning this claim:
 

 “Smith acknowledges in his second amended Rule 32 petition that in the Alabama Supreme Court’s holding in
 
 Ex parte Waldrop,
 
 859 So.2d 1181 (Ala.2002), the Court ‘interpreted
 
 Ring
 
 as not affecting Alabama’s capital sentencing statute.’ Further, on June 24, 2004, the United States Supreme Court specifically held that
 
 ‘Ring
 
 announced a new procedural rule that does not apply retroactively to case already final on direct review.’
 
 Schriro v. Summerlin,
 
 [542 U.S. 348 (2004)]. Thus, in addition to being procedurally barred from postcon-viction review, the Court finds that the allegation in Part V.(i) of Smith ⅛ second amended Rule 32 petition is without merit.”
 

 (Supp. C.R. 433-34.) Smith’s
 
 Ring
 
 claim was procedurally barred in this postconviction proceeding. See
 
 Hodges v. State,
 
 [Ms. CR-04-1226, March 23, 2007] — So.3d - (Ala.Crim.App.2007).
 

 Moreover, Smith was convicted of murdering the victim during the course of a robbery. The fact that increased Smith’s possible punishment to death, the robbery, was found by a jury to exist beyond a reasonable doubt. There was no
 
 Ring
 
 violation. See
 
 Ex parte Waldrop,
 
 859 So.2d 1181 (Ala.2002).
 

 C.
 

 Smith also argues that the circuit court erred in finding that his
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claim was procedurally barred because Smith failed to assert in his Rule 32 petition that the claim was based on newly discovered evidence. Specifically, he asserts only one ground in support of this claim. He contends that the State failed to disclose that one of its main witnesses, M.A., received favorable treatment for her testimony at Smith’s trial.
 

 
 *35
 
 In
 
 Williams v. State,
 
 782 So.2d 811, 818 (Ala.Crim.App.2000), we stated:
 

 “The appellant’s first argument is that the State withheld exculpatory information in violation of
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) .... The appellant did not assert that this claim was based on newly discovered evidence. Therefore, it is procedurally barred because he could have raised it at trial and on direct appeal, but did not. See Rule 32.2(a)(3) and (a)(5), Ala.R.Crim.P.;
 
 Boyd v. State,
 
 746 So.2d 364 (Ala.Cr.App.1999);
 
 Matthews v. State,
 
 654 So.2d 66 (Ala.Cr.App.1994);
 
 Lundy v. State,
 
 568 So.2d 399 (Ala.Cr.App.1990).”
 

 Likewise, Smith did not assert in his petition that this claim was based on newly discovered evidence; thus, it is procedurally barred in this postconviction proceeding.
 

 Moreover, the record shows that M.A. testified that she had no agreement with the State in exchange for her testimony at Smith’s trial. The prosecutor also stated for the record that M.A. had no agreement with the State. This contention is not supported by the record.
 

 D.
 

 Smith next asserts that the circuit court erroneously dismissed his juror-misconduct claims. Smith alleged that jurors failed to truthfully answer questions during voir dire and that the jury considered extraneous information during deliberations.
 

 The circuit court found that Smith failed to name a single juror by name, failed to identify a single question a juror did not truthfully answer, failed to plead what juror or jurors failed to answer what question, and failed to identify any allegedly extraneous evidence that the jurors considered during deliberations. It further held that Smith failed to allege any facts as to why this claim could have not have been raised at trial or on direct appeal.
 

 In
 
 Ex parte Pierce,
 
 851 So.2d 606 (Ala.2000), the Alabama Supreme Court stated the following in regard to juror-misconduct claims:
 

 “Pierce was not required to prove that this information meets the elements of ‘newly discovered material facts’ under Rule 32.1(e). While the information about Sheriff Whittle’s contacts with the jury may be ‘newly discovered,’ Pierce does not seek relief under Rule 32.1(e). Pierce does not contend that ‘[n]ewly discovered material facts exist which require that the conviction or sentence be vacated by the court.’ Rule 32.1(e). Instead, Pierce’s claim fits under Rule 32.1(a): ‘The constitution of the United States or of the State of Alabama requires a new trial....’ Rule 32.1(a) states a ground for relief distinct from that stated in Rule 32.1(e) ....
 

 “Although Rule 32.1(e) does not preclude Pierce’s claim, Rule 32.2(a)(3) and (5) would preclude Pierce’s claim if it could have been raised at trial or on appeal.”
 

 851 So.2d at 613-14. Under
 
 Pierce,
 
 this claim was procedurally barred because Smith failed to allege in his petition that the claim could not have been raised at trial or on direct appeal.
 

 For the foregoing reasons, we hold that the circuit court did not abuse its discretion in summarily dismissing Smith’s Rule 32 petition and we affirm the circuit court’s ruling.
 

 AFFIRMED.
 

 McMILLAN and WELCH, JJ., concur.
 

 BASCHAB, P.J., and SHAW, J., concur in the result.
 

 [1]
 

 . Rule 32.2(c), Ala.R.Crim.P., was amended effective March 22, 2002, to change the limitations period within which to file a Rule 32 petition from two years to one year.
 

 [2]
 

 .
 
 Atkins
 
 applies retroactively to all cases, even those on collateral review. See
 
 Schriro v. Summerlin,
 
 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004);
 
 Clemons v. State,
 
 55 So.3d 314 (Ala.Crim.App.2003).
 

 [3]
 

 . We may take judicial notice of our previous records involving Smith’s direct appeal. See
 
 Hull v. State,
 
 607 So.2d 369 (Ala.Crim.App.1992).
 

 [4]
 

 . Dyslexia is defined as “the inability to read, spell, and write words, despite the ability to recognize letters.”
 
 Dorland's Illustrated Medical Dictionary
 
 516 (W.B. Saunders Co. 28th ed. 1994).
 

 [5]
 

 . It appears that Smith’s brief on these claims is identical to the pleadings in his second amended petition concerning ineffective assistance of counsel.
 

 [6]
 

 . In 1999, § 15-12-21 was amended to remove the cap on fees an attorney appointed to represent an indigent defendant in a capital-murder case could receive.
 

 [7]
 

 . M.A. was a juvenile when she testified at Smith’s trial; thus, we are using initials to protect her anonymity.
 

 [8]
 

 . M.A. was in a juvenile detention facility at the time of Smith’s trial,
 

 [9]
 

 . The trial record also shows that counsel vigorously argued many grounds in support of suppressing Smith's confession.