WELCH, Judge.
Nathaniel Woods, an inmate on death row at Holman Correctional Facility, appeals the Jefferson Circuit Court’s summary dismissal of his petition for postcon-viction relief filed pursuant to Rule 32, Ala. R.Crim. P., attacking his capital-murder convictions and sentence of death.
In December 2005, Woods was convicted of four counts of capital murder for murdering Birmingham Police Officers Carlos Owen, Harley A. Chisholm III, and Charles R. Bennett, while they were on duty, and for murdering the three officers pursuant to one scheme or course of conduct, violations of § 13A-5-40(a)(5) and 13A-5-40(a)(10), Ala.Code 1975.[1] Woods *1130 was also convicted of attempting to murder Officer Michael Collins. The jury recommended, by a vote of 10 to 2, that Woods be sentenced to death for his capital-murder convictions. The circuit court followed the jury’s recommendation and sentenced Woods to death,. Woods was sentenced to life imprisonment for the attempted-murder conviction.[2]
On direct appeal, this Court initially remanded the case to the circuit court for that court to correct its sentencing order. See Woods v. State, 13 So.3d 1 (Ala.Crim.App.2007), On return to remand, we affirmed Woods’s convictions and sentence of death. See Woods v. State, 13 So.3d at 41 (opinion on return to remand). Woods neither filed an application for rehearing in this óourt or a petition for a writ of certio-rari to the Alabama Supreme Court; therefore, this Court issued a certifícate of judgment on January 9, 2008. See Rule 41(a), Ala. R.App. P.
In May 2008, this Court was notified that Woods had attempted to file an out-of-time appeal in the Alabama Supreme Court. On May 6, 2008, the Supreme Court notified Woods and this Court that it would not consider that motion until this Court had denied a motion to file án out-of-time application for rehearing. On May 9, 2008, more than five months after this Court affirmed Woods’s convictions, Woods moved that' this Court set aside the certificate of judgment issued in January 2008 and allow him to file an application for rehearing. The State opposed this motion. In Octobér 2008, this Court denied Woods’s motion. In August 2009, the Alabama Supreme Court denied Woods’s motion for an out-of-time appeal to that court.
Meanwhile, in December 2008, Woods filed a-petition for postconviction relief in the Jefferson Circuit Court and a request that the circuit court stay the proceedings until the Alabama Supreme Court issued a ruling on his request for an out-of-time appeal. The circuit court granted Woods’s motion and stayed the Rule 32 proceedings. In December 2010, after the Supreme Court denied Woods’s request for an out-of-time appeal, the circuit court issued an 80-page order dismissing Woods’s Rule 32, Ala. R.Crim, P., petition. This appeal followed.
In its order sentencing Woods-to death, the circuit court set out the following facts surrounding the’ triple homicide:
“On June 17th, 2004 Birmingham police officers Carlos Owen, Harley A. Chisholm III, Charles R. Bennett and Michael Collins ■ went to an apartment located at 1619 18th Street, Ensley, Birmingham, Alabama, to serve an arrest warrant on a Nathaniel Woods, who had been identified earlier in the day by these officers as being at this location. Prior to the officers’s arrival at this location, a dispatcher at Fairfield Police Department verified that an assault warrant was valid and unserved on Woods. The officers obtained an NCIC [National Crime Information Center] printout of the outstanding charges and a! photo of Nathaniel Woods. The location of the apartment where the officers had earlier contact with Nathaniel' Woods was in an area comprised primarily of residential homes just a few blocks from the West Precinct of the Birmingham Police Department.
*1131 “Officers Carlos Owen and Michael Collins went to the. rear- door of the apartment, and Officers Chisholm and Bennett went to the front door of the apartment. Nathaniel Woods came to the rear door with the screen door still in place between the officers and Woods. Officer Owen informed Woods that he had an outstanding warrant for his arrest. Woods responded with, ‘F-you. I don’t have no warrant.’
‘Woods was told several times that they had a warrant for his arrest. Officer Chisholm came around to the back of the apartment and from outside the screen door showed Woods the NCIC report and his photo. Woods responded, ‘That’s not me. F- that.’ He then turned and retreated into the apartment. Officer Chisholm opened the screen door to go after Woods. He was followed by Officer Owen and Officer Collins. While the officers were attempting to take Woods into custody in the doorway between the kitchen and the living room area of the apartment, Officer Collins heard Woods say, ‘Don’t spray me with that mace.’ At about the same time, Officer Collins heard a radio transmission from Officer Bennett, wherein Bennett yelled, ‘They are coming out the front.’
“Officer Collins turned and was leaving through the back screen door of the ápartment to assist Officer Bennett at the front when he heard gunfire from inside the apartment and'felt something hit him on his right side. He stood outside the apartment for a few seconds, and put out a radio broadcast, ‘Shots fired. Double aught. Officer down.’
“He could tell bullets were coming out the back door hitting different objects around him and knew he was being shot at by someone from inside the apartment. He took cover behind his patrol car and saw a male he later determined to be the co-defendant, Kerry Spencer, just outside the back door shooting at him with an SKS rifle.” . ;
(Trial Record, C.R. 92-94.)[3]
In this Court’s opinion on Woods’s direct appeal, we detailed the overwhelming evidence that was presented against’ Woods to show that Woods was an accomplice to the shootings:
“The State established that Woods and Spencer had engaged in a hostile, profanity-laced ’argument with Officers Owen and Collins on the morning of the shootings, and that'Woods threatened Officer Owen by stating: ‘Take off that badge and I will f-you up.” (R. 501.) Officer Sanders testified that Officer Chisolm had told him that Woods -had taunted the police by saying, ‘You can’t get me,’ and then running into the apartment. (R. 639.) Marquita McClure and Markesha Williams testified that, after the police left, Woods stated that he would kill the police. Fernando Belser testified that' Spencer said that if the police did not stop harassing him, he would ‘light ‘em up,’ and that Woods had said ‘[bjasically the same thing’ Spencer had said. (R. 762.) McClure asked Woods to leave the apartment with her, but Woods told her that he wanted to stay with Spencer in case the police came back.
-• “Officer Collins testified that when the officers returned to the apartment to arrest Woods, a man who had been outside said that he wanted no part of what was to take place. When the officers told Woods that they had a warrant for his arrest and attempted to take him into custody^ Woods cursed them and refused to come outside. He told the *1132 officers, ‘If you come in here, we’ll f-you up.’ (R. 694.) He then turned and ran toward the back of the apartment, causing the officers to pursue him to the doorway between the kitchen and the living room. Belser had previously testified that no one went beyond the kitchen area of the apartment unless Woods or Spencer invited them, and he said that anyone who did so could ‘get hurt pretty bad’ or ‘something could happen to them.’ (R. 754.) Spencer appeared with the assault rifle, and he fired it repeatedly, shooting Officers Owen and Chisolm multiple times. Woods told Spencer that another officer was at the front door, and Spencer turned and also shot Officer Bennett multiple times.
“Spencer and Woods ran from the apartment together; they ran to John Prather’s house because Woods knew Prather. After they burst into Prather’s house, Spencer and Woods let Prather know that he would be compensated for letting them stay there, and Prather deduced that the pair had been involved in the shooting nearby. Woods told Spencer, ‘You came through for me,’ Prather said. (R. 842.) Michael Scott was inside Prather’s house when Woods and Spencer entered, and he heard Woods say something like, ‘ “They f-ed with the wrong niggers. We shot their asses.” ’ (R. 860.) Scott described Woods’s demeanor as calm, not upset, when he made this statement.
“After Woods was arrested, Officer Owen’s weapon was recovered from Prather’s house, behind a heater near where Woods had been sitting. Although Spencer testified at his trial that he took Officer Owen’s gun before he left the apartment, in his statement to the police on the afternoon of the shooting, Spencer denied taking the weapon, thus permitting an inference that Woods walked into the kitchen after the shooting and took the officer’s weapon before he and Spencer left the apartment.”
13 So.3d at 28-29.

Standard of Review

Woods appeals the circuit court’s summary dismissal of his Rule 32 petition. According to Rule 32.3, Ala. R.Crim. P., “[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief.”
Rule 32.6(b), Ala. R.Crim. P., addresses the burden of pleading; in December 2010 it provided:
“The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.”
(Emphasis added.)
In discussing the pleading requirements of Rule 32.6(b), Ala. R.Crim. P., we have stated:
“‘“Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.” Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion ‘which, if true, entitle[s] the petitioner to relief.’ Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitlefs] a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala. *1133 R.Crim. P., to present evidence proving those alleged facts.’ ”
“[Boyd v. State,] 913 So.2d [1113,] 1125 [(Ala.Crim.App.2003)]. “The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The jfull factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b).”
Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App.2006) (emphasis added). “The pleading requirements of Rule 32 apply equally to capital cases in which the death penalty has been imposed.” Taylor v. State, 157 So.3d 131, 140 (Ala.Crim.App.2010).
More recently, the Alabama Supreme Court in Ex parte Beckworth, 190 So.3d 571 (Ala.2013), addressed the sufficiency of pleadings in postconviction proceedings and held that the petitioner has no burden to plead the absence of a ground of preclusion in the pleading stage. Specifically, the court held that “Beckworth’s Rule 32 petition should not have been dismissed on the ground that his claim for relief under Rule 32.1(a) lacked allegations negating the preclusive bars of Rule 32.2(a)(3) and (5).” 190 So.3d at 575.
Furthermore, this Court does not apply a plain-error standard of review when reviewing the dismissal or denial of a postconviction petition.
“Though we reviewed the claims on [Woods’s] direct appeal for plain error, the plain-error standard of review does not apply to a postconviction petition attacking a capital-murder conviction and death sentence. See Ferguson v. State, 13 So.3d 418, 424 (Ala.Crim.App.2008); Waldrop v. State, 987 So.2d 1186 (Ala.Crim.App.2007); Hall v. State, 979 So.2d 125 (Ala.Crim.App.2007); Gaddy v. State, 952 So.2d 1149 (Ala.Crim.App.2006). ‘In addition, “[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed.”) Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995). When reviewing the circuit court’s rulings on the claims raised in [Walker’s] postconviction petition, we apply an abuse-of-discretion standard. Gaddy, 952 So.2d at 1154.”
Ray v. State, 80 So.3d 965, 971 (Ala.Crim.App.2011).
“The sufficiency of pleadings in a Rule 32 petition is a question of law. ‘The standard of review for pure questions of law in criminal cases is de novo. Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003).’” Ex parte Beckworth, 190 So.3d at 573.
Last, “this Court may affirm the judgment of the circuit court for any reason, even if not for the reason stated by the circuit court.” Acra v. State, 105 So.3d 460, 464 (Ala.Crim.App.2012).
With these principles in mind we review the issues raised by Woods in his brief to this Court.[4]
I.
Woods first argues that the circuit court erred in summarily dismissing his petition because, he says, he more than satisfied the specificity requirements of Rule 32.6, Ala. R.Crim. P. Woods makes only general *1134 arguments that the circuit court erred in summarily dismissing his petition, that there is nothing onerous about the pleading requirements for postconviction petitions, and that the pleading requirements impose no burden on a petitioner.[5] Woods appears to argue that the civil notice-pleading standards apply to postconviction proceedings. ■ The circuit court specifically stated the following. concerning Woods’s burden of pleading his claims:
“ ‘The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one.’ Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App.2006). Under the plain language, of Rule 32, the .precise claims and supporting facts presented in a Rule 32 petition must be apparent from the face of the petition. See Ala. R.Crim. P. 32.3; Ala. R.Crim. P. 32.6(b); Boyd [v. State], 913 So.2d [1113] at 1125 [ (Ala.Crim.App.2003) ]. ‘The petition must contain a clear and specific statement of the grounds upon which relief is sought, including disclosure of the factual basis of those grounds.’ Ala. R.Crim. P. 32.6(b).
“To survive summary disposition, a Rule 32 claim must disclose - specific facts, which, if true, entitle the petitioner to relief. Burgess [v. State], 962 So.2d [272] at 295 [ (Ala.Crim.App.2005)]; Boyd, 913 So.2d at 1125; Ala. R.Crim. P. 32.6(b); see also Ala. R.Crim. P. 32.7(d) (providing that the court may dismiss the petition if it ‘determines that the petition is not sufficiently specific). ‘The full factual basis for the claim must be included in the petition itself.’ Hyde, 950 So.2d at 356 .... ‘If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b).’ Id.”
(Suppl.C.R.31-32.) The circuit court accurately cited the current law in regard to pléading claims in a postconviction proceeding. It is clear after reviewing the circuit court’s order that the court was aware of the legal distinction between the burden of pleading and the burden of proof in postconviction proceedings and did not confuse the two.
Neither do we agree with Woods’s characterization of the pleading requirements of Rule 32, Ala. R.Crim. P. This Court has on numerous occasions stated that the pleading requirements for postconviction petitions are more stringent than those for civil proceedings and are not analogous to the civil notice pleadings.
“Although postconviction proceedings are civil in nature, they are governed by the Alabama Rules of Criminal Procedure. See Rule 32.4, Ala. R.Crim. P. The ‘notice pleading1 requirements restive to civil cases do not apply to Rule 32 proceedings. ‘Unlike the general requirements related to civil cases, the pleading requirements for postconviction petitions are more stringent...,’ Daniel v. State, 86 So.3d 405, 410-11 (Ala.Crim.App.2011). Rule 32.6(b), Ala. R.Crim. P., requires that full facts be pleaded in the petition if the petition is to survive summary dismissal. See Daniel, supra. Thus, to satisfy the requirements for pleading as they relate to postconviction petitions, Washington was required to plead full facts to support each individual claim.”
*1135 Washington v. State, 95 So.3d 26, 59 (Ala.Crim.App.2012). See also Spencer v. State, 201 So.3d 573 (Ala.Crim.App.2015); Davis v. State, 184 So.3d 415 (Ala.Crim.App.2014).
Woods also argues that the circuit court unfairly dismissed the postcon-viction petition without giving him notice of the insufficiency of the petition. Here, the State filed its response to Woods’s petition on July 21, 2010, and filed an amended response on July 27, 2010. However, the circuit court did not issue its order dismissing Woods’s petition until December 1, 2010. Woods had more than an ample opportunity to respond to the State’s answer. More importantly, there is no provision in Rule 32, Ala. R.Crim. P., that requires a circuit court to notify the petitioner before dismissing a petition that fails to comply with the pleading requirements of Rule. 32.6(b), Ala. R.Crim. P. See Mashburn v. State, 148 So.3d 1094 (Ala.Crim.App.2013); Jenkins v. State, 105 So.3d 1234, 1244 (Ala.Crim.App.2011).
For the foregoing reasons, Woods is due no relief on this claim.
II.
Woods next argues that the circuit court erred in summarily dismissing his claims of ineffective assistance of counsel because they lacked specificity.
“To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ‘identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,’ Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.”
Hyde, 950 So.2d at 356 (emphasis added).
“ ‘The claim of ineffective assistance of counsel is a general allegation that often consists of numerous .specific subcategories. Each subcategory is an independent claim that .must., .be sufficiently pleaded.’ Coral v. State, 900 So.2d 1274, 1284 (Ala.Crim.App.2004), rev’d on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005).”
Daniel v. State, 86 So.3d 405, 416 (Ala.Crim.App.2011).
Woods first argues that the circuit court should have considered his ineffective-assistance-of-counsel claims cumulatively when deciding whether those claims met the pleading requirements of Rule.32, Ala. R.Crim. P. However, in addressing this argument, this Court has stated:
“Taylor ... contends that the allegations offered, in support of a claim of ineffective assistance of counsel must be considered cumulatively, and he cites Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). However, this Court has noted: ‘Other states and federal coürts are not in agreement as to whether the “cumulative effect” analysis' applies to Strickland [v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984)] claims’; this Court has also stated: ‘We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel.’ Brooks v. State, 929 So.2d 491, 514 (Ala.Crim.App.2005) ...; see also McNabb v. State, 991 So.2d 313, 332 (Ala.Crim.App.2007); and Hunt v. State, *1136 940 So.2d 1041, 1071 (Ala.Crim.App.2005). More to the point, however, is the fact that even when a cumulative-effect analysis is considered, only claims that are properly pleaded and not otherwise due to be summarily dismissed are considered in that analysis. A cumulative-effect analysis does not eliminate the pleading requirements established in Rule 32, Ala. R.Crim. P. An analysis of claims of ineffective assistance of counsel, including a cumulative-effect analysis, is performed only on properly pleaded claims that are not summarily dismissed for pleading deficiencies or on procedural grounds. Therefore, even if a cumulative-effect analysis were required by Alabama law, that factor would not eliminate Taylor’s obligation to plead each claim of ineffective assistance of counsel in compliance with the directives of Rule 32.”
Taylor v. State, 157 So.3d 131, 140 (Ala.Crim.App.2010). The circuit court did not err in considering each of Woods’s claims of ineffective assistance of counsel individually and not cumulatively when considering the sufficiency of Woods’s pleadings.
Woods makes only one specific argument in this section of his brief. He argues that the circuit court erred in summarily dismissing his claim that his trial counsel was ineffective for failing to secure the services of a handwriting expert to counter the State’s handwriting expert. In his Rule 32, Ala. R.Crim. P., petition, Woods merely pleaded the following:
“Trial counsel failed to present an independent handwriting expert, who could have contradicted the testimony of the State’s handwriting expert that Mr. Woods had written lyrics found in his cell. If trial counsel had done so, they would have been able to attack the State’s assertions that these lyrics represented an admission of the offense by Mr. Woods.”
(C.R.408.)
Evidence at Woods’s trial established that police discovered a drawing in Woods’s cell that depicted two men shooting firearms. “One man is shooting an assault rifle and three flaming skulls are depicted in the blasts from that weapon, and the other man is shooting two handguns. The drawing contains a heading at the top, ‘NATE [Woods’s nickname] $ NOOKIE [Spencer’s nickname],’ and depicts street signs at an intersection of ‘18th Street and Ensley.’ When Deputy Gillum removed the drawing, Woods said that the drawing was his and that he wanted it back.” 13 So.3d at 14. The following lyrics, that were handwritten on a document in Woods’s cell, were also discovered:
“ ‘Seven execution styles murders
I have no remorse because I’m the f-ing murderer
Haven’t you ever heard of a killa
I drop pigs like [codefendant] Kerry Spencer
So when I walk around strapped
One time bust the caps and watch pigs elapse
Snapp, adapt to this because I needs no adapter this is just the first chapter.’ ”
13 So.3d at 14. The State’s expert testified that Woods wrote the lyrics.
When summarily dismissing the claim that counsel was ineffective for failing to secure a handwriting expert, the circuit court stated:
“Woods fails to specify exactly what information an ‘independent handwriting expert’ would have uncovered, how this unnamed expert would have uncovered such information, whether/how trial counsel could have located the expert, whether the expert would have been available to testify at Woods’s trial, or *1137 how the expert would have contradicted the testimony of the State’s handwriting expert. In sum, rather than offering any specific facts that allegedly would have been discovered through adequate investigation by an ‘independent handwriting expert,’ Woods offers only vague speculation. Further, Woods does not plead any facts tending to .show exactly how testimony by this expert would have aided trial counsel in the presentation of his case; nor does he explain whether/how the results of the expert’s investigation would have, been admissible at trial. Moreover, Woods also failed to plead any specific-facts indicating that he was prejudiced by counsel’s acts or omissions—facts indicating that there existed a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Instead, his claim consists only of naked allegations unsupported by specific facts.”
(Suppl.C.R.86.)
When pleading a postconviction claim that trial counsel was ineffective for failing to secure the services of an expert, this Court has required that the petitioner include in its pleading the expert’s identity and the content of that expert’s expected testimony. As we have stated:
“The circuit court correctly found that this claim was insufficiently pleaded because Washington failed to plead the identity of experts or the content of those experts’ testimony. See McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007); Woods v. State, 957 So.2d 492 (Ala.Crim.App.2004), rev’d on other grounds, 957 So.2d 533 (Ala.2006).”
Washington, 95 So.3d at 64. See also Windsor v. State, 89 So.3d 805 (Ala.Crim.App.2009).
Neither did Woods plead how he was prejudiced 'by counsel’s failure to secure a handwriting expert. The record shows that Steven Drexler, a former handwriting examiner with the Alabama Department of Forensic Sciences, testified that it was his opinion “that the questioned writing was written by the author of the Nathaniel Woods’s handwriting standard.” (Trial R. 1391.) Woods’s counsel rigorously cross-examined Drexler, and he testified that he had, in fact, given two opinions in the case, that after issuing his first opinion he requested more writing samples, and that his second opinion more strongly suggests that the questioned sample had been written by Woods.
The record further shows that Woods’s trial attorney did move for funds to hire an “independent expert for handwriting analysis.” (Trial C.R. 1574.) That motion was granted. During a pretrial hearing, defense counsel discussed the fact that she was having difficulty securing an expert and had only just received discovery concerning the handwriting analysis from the State. (Trial R. 126.) It appears that a continuance was granted on that basis. Although Woods did not present his own expert on handwriting analysis, counsel did conduct a thorough' cross-examination of the State’s expert.
“[H]ow to deal with the presentation of an expert witness by the opposing side, including whether to- present counter expert testimony, to rely upon cross-examination, to forgo cross-examination and/or to forgo development of certain expert opinion, is a matter of trial strategy which, if reasonable, cannot be the basis for a successful ineffective assistance of counsel claim.”
Thomas v. State, 284 Ga. 647, 650, 670 S.E.2d 421, 425 (2008).
Woods failed to comply with the pleading requirements of Rule 32.6(b), Ala. R.Crim. P.; therefore, the circuit court correctly summarily dismissed this claim. Woods is due no relief on this claim.
*1138 III.
Woods next argues that .the circuit court erred in summarily dismissing his claim that his- trial couhsel was ineffective for failing to adequately investigate, and present evidence in support of his defense. We address those issues Woods specifically argues in this section of his brief.
A.
First, Woods argues that his trial counsel was ineffective for failing to secure the services of several different experts. Specifically, Woods argues that counsel should have secured experts: (1) to conduct independent tests on the shirt he was wearing at the time of the murders to show that mace was on the shirt; (2) to test for latent fingerprints' in the bathroom; and (3) to test a shoe print found in the tub to show that Woods left through the bathroom-window and did not leave the apartment with his codefendant Spencer.
In Woods’s postconviction petition, he pleaded the following facts relative to this claim:
“Trial counsel was constitutionally ineffective in failing to obtain independent testing of key items of physical evidence that would have substantiated the defense’s casé at’ trial. ' First, defense counsel should have obtained independent testing of the shirt that Mr, Woods was wearing at the time óf the incident for mace.' If trial counsel had done so, upon information and belief, these test results would have revealed the presence of mace. This would have supported testimony that Mr. Woods had been maced and would have corroborated the defense theory that Spencer was reacting spontaneously to the use 'of force by the officers.
“Trial counsel also should have gotten an independent evaluation of latent fingerprints found on the bathroom window. Upon information and belief, if trial counsel had done so, these latent prints would have matched- Mr; Woods’s fingerprints. Trial counsel also should have obtained an independent expert to evaluate the shoe print found in the bathtub. Upon information and belief, if trial counsel had done so', this shoe print would have been found to match Mr. Woods’s shoes. These pieces of evidence would have demonstrated that Mr. Woods did not leave the apartment through the front door with Spencer as the State claimed but rather climbed out the bathroom window. This would have called into question the State’s arguments that'1 Mr. Woods was' acting in concert with Spencer because they left together.” '
(Suppl,G.R.406.)
When addressing a similar claim that counsel was ineffective for failing to secure the presence of an expert, this Court in Daniel v. State, 86 So.3d 405 (Ala.Crim.App.2011), stated:
“Daniel failed to identify, by name, any forensic or DNA expert who could have testified at Daniel’s trial or the content of the expert’s expected testimony. Accordingly, Daniel failed to comply with the full-fact pleading requirements of Rule 32.6, Ala. R.Crim. P. See McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007) (claim that counsel was ineffective for failing to retain an expert not sufficiently pleaded because expert was not identified); Woods v. State, 957 So.2d 492 (Ala.Crim.App.2004), rev’d on other grounds, 957 So.2d 533 (Ala.2006) (claim of ineffective assistance of counsel not sufficiently pleaded because Woods failed to identify an expert by name).”
86 So.3d at 425-26. As we stated previously, to sufficiently plead a claim that counsel was ineffective in failing to secure the, services of an expert, the petitioner *1139 must identify the expert by name and plead his/her expected testimony.
Moreover, Woods failed to plead how he was prejudiced. Woods’s trial record shows that counsel moved for funds to hire a private investigator. (Trial C.R. 133-34.) That motion was granted. (Trial C.R, 535.) Counsel also moved to inspect, examine, and test all. physical evidence collected by the State, (Trial C.R. 237.) That motion was granted and the court wrote on the case-action summary: “Motion to inspect and examine physical evidence is granted and tests will require additional motions.” (Trial C.R. 520.)
Furthermore, one of Woods’s witnesses who was in the apartment at the time of the shootings, Markesha Williams, testified that she did not see Officer Chisholm spray pepper spray and that she has asthma and would have gotten sick if pepper spray had been sprayed in the apartment. (Trial R. 1470.) Another State witness, Fernando Belser, who was also present at the time of the shootings, testified that he did not see Officer Chisholm spray pepper spray, that‘he did not cough or smell any pepper spray, and that Woods was not coughing. Another State witness, Michael Scott, testified that he was at John Prather’s house on the day:of the shooting when Woods and Spencer ran into the' back door of the house together. When asked about Woods’s appearance, Scott testified that Woods was not coughing, that Woods did not have trouble breathing, that there were no tears coming from Woods’s eyes, that there was nothing coming from Woods’s nose, that Woods was not rubbing his eyes, and that Woods did not appear to have difficulty seeing in the minutes after the fatal shootings..
Woods’s codefendant, Kerry Spencer, also testified that when he finished shooting his rifle he threw the rifle down and he and Woods ran from the apartment together down the alley and into a neighbor’s house.[6] (Trial R. 1595.) Two witnesses at the neighbor’s house testified that. Woods and Spencer arrived at the neighbor’s house together. .
The circuit court committed no error in summarily dismissing this claim because Woods failed to satisfy the pleading requirements of Rule 32.6(b), Ala. R.Crim. P. Mot only did Woods fail to plead full facts but also failed to plead how he was prejudiced by counsel’s actions. This claim was correctly summarily dismissed and Woods is due no-relief.
B.
Woods next argues that his trial counsel was ineffective for failing to secure police records ‘in order to establish discrepancies in police procedures that, he says, caused the confrontation that ultimately ended in three police officers being killed.
In regard to this claim, Woods pleaded the following:
“Trial counsel also failed to seek and obtain discovery of the policies and procedures of the Birmingham Police Department regarding the actions of the officers, including patrolling areas outside of your beat, conducting .in-home arrests for a misdemeanor warrant from another jurisdiction and use of force. These documents would have allowed the defense to more effectively challenge the State’s arguments that these officers were acting completely by the book and simply doing their duty at the time of this incident. Without these documents, defense counsel were left to simply ask *1140 police witnesses whether their colleagues had followed proper procedures without any independent ability to challenge then- responses.”
(C.R.407-08.) This claim was correctly summarily dismissed because Woods failed to include how he was prejudiced by the failure to secure the records. Woods’s trial counsel did question the officers about police procedures and why the police were at the apartment on the day of the shootings. Indeed, Woods’s pleadings admit as much.
“[Ejxpert testimony on police procedures was unnecessary where counsel cross-examined the Commonwealth witnesses, who were police officers, in an effective manner so as to convey the same information. See Commonwealth v. Marinelli, 570 Pa. 622, 810 A.2d 1257, 1269 (2002) (rejecting claim that counsel was ineffective for failing to call a defense expert witness to refute testimony proffered by a Commonwealth witness when trial counsel engaged in effective cross-examination of the Commonwealth witness). The Commonwealth1 cogently notes that trial counsel elicited testimony both on direct and cross-examination establishing that Officer Wertz was wearing plainclothes, did not shout for Appellant to stop, did not display his badge, which was later recovered from his police vehicle, and that these actions violated police procedures. Trial counsel was not required to present additional expert testimony to establish facts which were already before the jury, and, indeed, were largely uncontested.”
Commonwealth v. Rivera, 108 A.3d 779, 795 (Pa.2014).
The circuit court correctly summarily dismissed this claim because it failed to satisfy the pleading requirements of Rule 32.6(b), Ala. R.Crim. P. Woods is due no relief.
. C.
Woods next argues that his trial counsel was ineffective for failing to investigate and present an intoxication defense. Woods merely pleaded the following in regard to this claim:
“Trial counsel also failed to investigate and present evidence in support of a voluntary intoxication defense. Under Alabama law, voluntary intoxication can negate the specific intent necessary for a conviction of capital murder, x-educing the offense to manslaughter. See Fletcher v. State, 621 So.2d 1010, 1019-21 (Ala.Crim.App.1993). Counsel should have investigated and presented evidence that at the time of this incident, Mr. Woods was using 3.5 grams of cocaine everyday as well as using marijuana' and drinking large amounts of alcohol. Mr. Woods snorted 4.5 grams of cocaine, smoked 1 ounce of marijuana, and drank 12 beers in the hours before the confrontations with police and was intoxicated at the time of the incident. Trial counsel also should have obtained an expert that could have explain[ed] the effects of cocaine addiction and intoxication on Mr. Woods’s mental state. If trial counsel had investigated and presented this evidence of voluntary intoxication, there is a reasonable probability that Mr. Woods would have been convicted of a lesser offense.”
(C.R.408-09.)
In affirming the circuit court’s suinmary dismissal of a similar claim that was raised in Spencer’s, Woods’s codefendant’s, post-conviction petition, this Court stated:
“This Court has held that a petitioner fails to plead sufficient facts regarding a claim that counsel failed to present an intoxication defense when he makes only a bai-e allegation that the petitioner was intoxicated at the'time of the offense. As this Court has stated: ‘[The appel *1141 lant] failed to allege how much he had to drink the night of the crime, how long before the crime he had been drinking, or any fact indicating that his alleged intoxication amounted to insanity.’ Connolly v. State, 33 So.3d 618, 623 (Ala.Crim.App.2007).
“ ‘[The appellant] failed to plead sufficient facts to indicate that voluntary intoxication would have been a viable defense or that he would have been entitled to a jury instructions on voluntary intoxication ...; thus, he failed to plead sufficient facts indicating that his trial counsel were ineffective in this regard.’
“Mashburn v. State, 148 So.3d 1094, 1126-27 (Ala.Crim.App.2013). This claim was insufficiently pleaded.”
Spencer v. State, 201 So.3d at 23-24. The same is true in this case. Woods failed to plead sufficient facts that would support a defense of intoxication.
“Mashburn failed to plead sufficient facts to indicate that voluntary intoxication would have been a viable defense or that he would have been entitled to jury instructions on voluntary intoxication or any lesser-included offenses; thus, he failed to plead sufficient facts indicating that his trial counsel were ineffective in this regard. See, e.g., Connally v. State, 33 So.3d 618, 622-23 (Ala.Crim.App.2007). Therefore, summary dismissal of this claim of ineffective assistance of counsel was proper.”
Mashburn v. State, 148 So.3d 1094, 1126-27 (Ala.Crim.App.2013).
Moreover, in regard to Woods’s claim that counsel was ineffective for failing to secure an expert to testify concerning the effects of cocaine and alcohol addiction, this Court has stated:
“Some courts have found that expert testimony on the effects of alcohol is not necessary because it concerns an issue within the common knowledge of a juror. As the Washington Court of Appeals stated in State v. Thomas, 123 Wash.App. 771, 98 P.3d 1258 (2004):
“ ‘A voluntary intoxication defense allows the jury to consider “evidence of intoxication” to determine whether the defendant acted with the requisite intent. But unlike diminished capacity, it is not necessary to present expert testimony to support an involuntary intoxication defense. The effects of alcohol are commonly known and jurors can draw reasonable inferences from testimony about alcohol use. State v. Kruger, 116 Wash.App. 685, 692-93, 67 P.3d 1147, rev. denied 150 Wash.2d 1024, 81 P.3d 120 (2003); State v. Smissaert, 41 Wash.App. 813, 815, 706 P.2d 647 (1985).’
“123 Wash.App. at 781-82, 98 P.3d at 1263. See also State v. Frank, 364 N.W.2d 398, 400 (Minn.1985) (‘Most jurors have some experience with the effects of excessive alcohol consumption and therefore, in an ordinary case, will not need expert assistance.’).”
Wiggins v. State, 193 So.3d 765, 801-02 (Ala.Crim.App.2014).
The circuit court correctly summarily dismissed this claim because Woods failed to satisfy the pleading requirements of Rule 32.6(b), Ala. R.Crim. P. Woods is due no relief.
D.
Woods argues that the circuit court erred in summarily dismissing his claim that his trial counsel was ineffective for failing to request an instruction on manslaughter as a lesser-included offense. In his petition, Woods pleaded the following:
“Trial counsel was constitutionally ineffective in failing to request a jury instruction on the lesser-included offense *1142 of manslaughter. If counsel had made such a request, the instruction should have beeh -given, since the evidence adduced at trial reasonably supported a manslaughter theory. See Section IX, supra (incorporated by reference); see also Ex parte Oliver, 518 So.2d 705, 706 (Ala.1987) ... ; see also Ala.Code § 13A-1-9(b) (requiring rational basis for court to charge the jury on included offense).”
(C.R.409.) Again, Woods failed to fully plead this claim. Woods references the substantive issue in section IX of his Rule 32 .petition where he argued that the circuit court erred in failing to give a manslaughter instruction; , however, in this section of Woods’s petition Woods was pleading that his trial counsel was ineffective. Woods had the added burden of pleading how he was prejudiced by counsel’s failure to request a jury charge on manslaughter. Woods failed to do so. Accordingly, Woods “failed to not only plead sufficient facts, but also failed to plead prejudice.” Lee v. State, 44 So.3d 1145, 1170 (Ala.Crim.App.2009).
Indeed, the record establishes no -rational basis for an instruction on manslaughter as a lesser-included offense.[7] Markesha Williams, who testified in Woods’s behalf, said that the second time-the officers came to the. apartment Woods was “outside messing with some speakers in his car.” (Trial R. 1447.) At sentencing, Woods testified in his own behalf and the following occurred:
“[Defense counsel]: Were you doing the drugs as you sold them?
“[Woods]: Nah, I wasn’t smoking crack. I would snort powder.
“[Defense counsel]: You would snort the powder?
“[Woods]: Yes.
“[Defense counsel]: And how much of the powder would you snort a day?
“[Woods]: Probably like about three grams.
“[Defense counsel]: About three grams? Did you have a habit?
“[Woods]: Not really a habit. I do it just to stay up two or three days.”
(Trial R. 1831-32.)
The circuit court correctly summarily dismissed this claim because Woods failed to plead how he was prejudiced’by the failure to give an instruction on manslaughter as a lesser-included offense. See Rule 32.6(b), Ala. R.Crim. P. Woods is due no relief:
IV.
Woods next argues that the circuit court erred in summarily dismissing his claim of juror misconduct because, he says, he “adequately pleaded that [he] is' constitutionally entitled to á new trial because ... of jurors’ "exposure to the publicity surrounding the killings of three Birmingham police officers.” (Woods’s brief, at p. 35.)
In his postconviction petition, Woods pleaded the following: .
“All of the jurors who decided Mr. Woods’s guilt or innocence and recommended a death sentence had been exposed to pretrial publicity, A large number of law enforcement officers were present in the courtroom through out the trial. Under these circumstances, there is a high likelihood that jurors’ deliberations were effected by outside influences.

■it

“Consideration of extraneous evidence by the jury during deliberations is also *1143 grounds for reversal. - A criminal defendant has the right to a fair and impartial jury....
“The conduct of the jurors in this case deprived Mr. Woods of his right to be tried by an impartial jury, his right to have questions answered by prospective jurors to enable his counsel to exercise their peremptory strikes and to challenge jurors for cause, and his rights to due process, a fair trial, an impartial jury, equal, protection, and a reliable sentencing protected by the Fifth, Sixth, Eight, and Fourteenth Amendments to the United States Constitution, the Alabama constitution, and Alabama law.”
(C.R.454-55.)
In summarily dismissing this claim, the circuit court stated:
“Woods’s juror misconduct' claim is due to be summarily dismisséd because it does not satisfy the specificity and full factual pleading requirements of Rules 32.3 and 32.6(b) of the Alabama Rules of Criminal Procedure. As discussed above, to survive summary disposition, a Rule 32 petition must disclose specific facts, which, if true, entitle the petitioner to relief. Ala. R.Crim. P. 32.3; Ala. R.Crim. P. 32.6(b); Burgess [v. State], 962 So.2d [272] at 295 [ (Ala.Crim.App. 2005) ]; Boyd [v. State, 913 So.2d [1113] at 1125 [(Ala.Crim.App.2007)]. The instant claim fails to satisfy this standard.
“Woods has failed to satisfy his burden of pleading specific facts in support of his juror misconduct claim, which, if true, would establish that his claim merits Rule 32 relief. For example, he fails to specifically allege what action(s) constituted juror misconduct, which juror(s) engaged in misconduct, when/how the alleged misconduct occurred, and how alleged actions by the juror(s) resulted in prejudice to him. Instead, his claim consists entirely of vague, conclusory allegations that juror misconduct occurred at his trial, coupled with speculative assertions that -he was prejudiced as a result. The claim, therefore, fails to satisfy the pleading 'requirements of Rule 32.3 and the specificity requirements of Rule 32.6(b).”
(Suppl.C.R.99-100.)
Although we recognize that Woods was not required to plead that his claim of juror misconduct met the elements of newly discovered evidence, see Ex parte Pierce, 851 So.2d 606 (Ala.2000), Woods was required to identify the jurors and the actions he alleged constituted juror misconduct. See Smith v. State, 71 So.3d 12, 35 (Ala.Crim.App.2008). See also Spencer v. State, 201 So.3d at 593 (Ala.Crim.App.2015) (“Spencer failed to plead the identity of the allegedly biased prospective jurors; therefore, according to Washington [v. State, 95 So.3d 26-64 (Ala.Crim.App.2012) ], this claim was correctly summarily dismissed because Spencer failed to plead sufficient facts that' would entitle him to relief.”). •
The circuit ’ court correctly summarily dismissed' this claim because Woods failed to plead sufficient facts to satisfy the full-fact pleading requirements of Rule 32.6(b), Ala. R.Crim. P. Woods is due no relief on this claim.
V.
Woods next argues that the circuit court erred in summarily dismissing the remainder of his ineffective-assistance-of-counsel claims. Specifically,. he argues that his counsel was ineffective for failing to investigate Woods’s and Spencer’s differing roles in selling drugs out of the apartment they, shared and that trial counsel was ineffective for failing to' obtain the transcript of Spencer’s trial.
In his petition, Woods merely pleaded the following:
*1144 “Trial counsel failed to investigate and present evidence about the role Mr. Woods and Kerry Spencer played in the drug house. This evidence would have shown that Spencer was in charge and that Mr. Woods followed Spencer’s leadership. By contrast, the State argued at trial that Mr. Woods was in charge and therefore planned the shootings. If trial counsel had investigated and presented this evidence, the State would not have been able to make this prejudicial argument.[8]
“Trial counsel failed to obtain the complete record from Kerry Spencer’s trial. The complete record was critical to anticipating and effectively countering the prosecution’s case at Mr. Woods’s trial.”
(C.R.409-10.) Woods failed to plead how he was prejudiced by counsel’s alleged failure to investigate the role Spencer and Woods had in the sale of drugs from the apartment and counsel’s failure to obtain the transcript of Spencer’s trial. Thus, Woods failed to plead the full facts in regard to this claim, and the circuit court correctly summarily dismissed the claim because it failed to meet the specificity requirements of Rule 32.6(b), Ala. R.Crim. P. Woods is due no relief on this claim.
VI.
Woods next argues that the circuit court erred in summarily dismissing his claim that he was denied the effective assistance of counsel in his direct appeal. He makes several different arguments in support of this contention, and we address each argument individually.
A.
First, Woods argues that his appellate counsel abandoned his case by not filing an application for rehearing; therefore, he says, he is entitled as a matter of law to an out-of-time appeal and he cites several cases in support of this contention. These cases, however, all involve situations where counsel failed to file a brief on direct appeal or where counsel failed to pursue the direct appeal.[9] Here appellate counsel filed a brief but declined to file an application for rehearing after this Court affirmed Woods’s conviction and death sentence.
The circuit court found that this claim was precluded pursuant to Rule 32.2(a), Ala. R.Crim. P., because, it stated, this claim had been raised before this Court and the Alabama Supreme Court. Additionally, the circuit court found that the claim had no merit and was due to be dismissed based on the Alabama Supreme Court’s decision in Ex parte Carruth, 21 So.3d 770 (Ala.2009).
The circuit court correctly found that this claim had been raised in this Court and the Alabama Supreme Court; therefore, it was procedurally barred in this postconviction proceeding. Rule 32.2(a), Ala. R.Crim. P.
Moreover, the circuit court correctly determined that this claim had no merit:
*1145 “The Alabama Supreme Court and the Alabama Court of Criminal Appeals have rejected the arguments that Woods raises in the instant claim. See State v. Carruth, 21 So.3d 764, 767-70 (Ala.Crim.App.2008); Ex parte Carruth, 21 So.3d 770, 771-72 (Ala.2009), cert. denied, [558 U.S. 1052] 130 S.Ct. 742 [175 L.Ed.2d 521] (U.S.2009); State v. Martin, [56 So.3d 709] (Ala.Crim.App.2009). Furthermore, in addressing cases similar to the one at hand, the Alabama appellate courts have held that Rule 32 does not provide a mechanism for obtaining permission to file an out-of-time application for rehearing and/or petition for writ of certiorari. See id.
“For example, in Carruth, 21 So.3d 764, the Alabama Court of Criminal Appeals held that Rule 32 did not provide grounds for a petitioner to file an out-of-time petition for writ of certiorari to the Alabama Supreme Court. Like Woods, the petitioner in Carruth argued that he was entitled to challenge his capital murder conviction via an out-of-time appeal to the' Alabama Supreme Court on the grounds that: (1) his appellate counsel was ineffective for failing to file a petition for writ of certiorari in the Alabama Supreme Court and (2) the petitioner’s failure to ‘appeal’ the Court of Criminal Appeals’s decision was through no fault of his own. The Court of Criminal Appeals rejected these arguments. First, it held that Rule 32.1(f) does not provide a valid basis for granting a petitioner’s request to file an out-of-time petition for writ of certiorari. Carruth, 21 So.3d at 766-67 [776-67]. In addition, it held that because a defendant has no right to appellate counsel on appeal to the Alabama Supreme Court, appellate counsel’s failure to appeal the Court of Criminal Appeals’ decision could not be ineffective assistance of counsel so as to permit the filing of an out-of-time petition for writ of certiorari to the Alabama Supreme Court. Id. at 767-70.”
(Suppl.C.R.36-37.) We agree with the circuit court’s findings.
“The right to counsel as guaranteed by the Sixth Amendment to the United States Constitution encompasses the right to ‘effective assistance of counsel.’ ” Hallford v. State, 629 So.2d 6, 8 (Ala.Crim.App.1992). A defendant is entitled to counsel in a direct appeal. The United States Supreme Court, however, has held that there is no right to counsel in discretionary state appeals. See Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). This Court has characterized an application for rehearing as a discretionary review. In Kinsey v. State, 545 So.2d 200 (Ala.Crim.App.1989), we explained:
“In Alabama, all persons convicted of a criminal offense are granted the right to an appeal by Alabama Code 1975, § 12-22-130. This appeal is a right granted to the defendant and is to the Court of Criminal Appeals. Alabama Code 1975, § 12-3-9. Any subsequent review of a criminal conviction by a higher state appellate court is by writ of certiorari to the Alabama Supreme Court. Review by certiorari is entirely discretionary with our Supreme Court (except in capital cases). See [Ala. R.App. P.] Rule 39; Ex parte Sellers, 250 Ala. 87, 33 So.2d 349 (1948). The Supreme Court will consider a petition for writ of certiorari ‘only after the court of appeals has overruled an application for rehearing....’ [Ala. R.App. P.] Rule 39(a). Thus, a rehearing by this Court lies somewhere between a defendant’s first appeal as a matter of right and a subsequent discretionary review.
“With regard to rehearings,
“ ‘it is generally the rule that, except in eases provided for by statute, a rehearing is not a matter of right, but *1146 a privilege given by -the appellate court, and governed and limited by its rules. Accordingly it is often held that an application for a rehearing of an appeal addresses itself to the discretion of the court, and its decision in the matter is final.’ 5 C.J.S. Appeal & Error § 1409 (1958) (footnotes omitted) ....
“Section 12-22-130, which provides for an appeal as of right, does not contain any reference to a rehearing. We have not found any statute which grants rehearing by this Court as a matter of right.
“ ‘Where a rehearing is not a matter of right, ... the petition or application amounts to merely a friendly suggestion to the court informing it of its oversight or errors.’ 5 C.J.S. Appeal & Error § 1428 (1958) (footnote omitted). The courts of this state have never explicitly held that a rehearing is a matter of right. However, our courts have consistently treated a rehearing as a matter within the discretion of the court to which the application is addressed, ‘The office of an application for rehearing is .to invite a re-examination of the questions decided in respect to then-soundness as applied to the merits of the case as presented on appeal,,.. ’ Redd Chemical & Nitrate Co. v. W.T. Clay Mercantile Co., 219 Ala. 478, 479, 122 So. 652, 653 (1929) (rehearing before Supreme Court). In overruling an application for rehearing in Gossett v. Pratt, 250 Ala. 300, 301, 34 So.2d 145, 146 (1947), the Supreme Court stated: ‘The object and purpose of an application for rehearing is to invite review by the court as'to the correctness of the opinion and judgment of the court as presented on the record upon which the case is submitted.’ Although Redd Chemical and Gossett involved applications for rehearing before our -state Supreme Court, the principle under consideration applies to the intermediate appellate courts. In Redwine v. State, 36 Ala.App. 560, 569, 61 So.2d 715, 723, cert. denied, 258 Ala. 196, 61 So.2d 724 (1952), the Alabama Court of Appeals observed: ‘An application for rehearing amounts to merely a friendly suggestion to an appellate court informing [the court] of possible errors in its rendered opinion,’ ..... Further indication of the discretionary nature of a rehearing is found in Saylor v. State, 278 Ala. 297, 177 So.2d 926 (1965), cert. denied, Saylor v. Alabama, 383 U.S. 917, 86 S.Ct. 909, 15 L.Ed.2d 671 (1966). In response to the defendant’s contention that the Court of Appeals ‘erred, as a matter of law, in denying the motion for a rehearing,’ the Supreme Court noted that ‘[i]t was within the discretion of the Court of Appeals as to whether that court would set aside its opinion, set aside the submission of the cause and restore it to the docket.’ 278 Ala. at 297, 177 So.2d at 927.”
545 So.2d at 203-04. See also Elliott v. State, 768 So.2d 422 (Ala.Crim.App.1999).
“In Ross v. Moffitt, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), this Court held that a criminal defendant does not have a' constitutional right to counsel to pursue discretionary state appeals or application for review in this Court,... Since respondent has no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel’s failure to file the application timely.”
Wainwright v. Torna, 455 U.S. 586, 587-88, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982). See also Jackson v. Johnson, 217 F.3d 360, 364-65 (5th Cir.2000) (“Jackson asks us to *1147 hold that he received ineffective assistance of counsel on direct appeal because his attorney failed (1) to file a motion for rehearing or, alternately, (2) to inform Jackson of his .right to file such motion pro se. Jackson cannot have received constitutionally deficient counsel on his motion for rehearing, however, if he had no constitutional right to counsel for purposes of filing a rehearing motion. ‘A criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals.’ When a state grants a criminal defendant an appeal of right, the Constitution requires only that the defendant’s claims be ‘once ... presented by a lawyer and passed upon by an appellate court.’ Not only does a motion for rehearing come after the appellate court has passed on the claims; there can be no question that the granting of a motion for rehearing lies entirely within the discretion of a court of appeals. Rehearing at that point is by no means an appeal of right.”). '
This claim was correctly summarily dismissed because it was raised and addressed by this Court and the Alabama Supreme Court and because it failed to state a claim upon which relief could be granted. See Rules 32.2(a), Ala. R.Crim. P., and 32.7(d), Ala. R.Crim. P. Woods is due no relief on this claim.
B.
Woods further asserts that he is entitled to an out-of-time appeal from his attempted-murder conviction because, he says, his appellate counsel failed to appeal that conviction.
The circuit court found that this claim was time-barred. The circuit court stated:
■ “The instant claim only concerns Woods’s conviction for attempted murder. Woods was convicted of this offense on October 10, 2005, and he was sentenced on December 9, 2005, He did not file a direct appeal challenging this conviction; therefore, his Rule 32.2(c) limitations period began to run on January 20, 2006—the last day upon which he could have filed a notice of appeal pursuant to Rule 4(b)(1) of the Alabama Rules of Appellate Procedure. See Ala. R.Crim. P. 32.2(c); Ala. R,App. P. 4(b)(1) (Tn a criminal case a notice of appeal by the defendant shall be filed with the clerk of the trial court within 42 days (6 weeks) after pronouncement of the sentence.’) The limitations period expired one year later. Ala. R.Crim. P. 32.2(c).
“Thus, Woods’s Rule 32 claim challenging his attempted murder conviction, to be timely, should have been filed no later than January 22, 2007. See Ala. R.Crim. P. 32.2(c). Woods, however, did not raise this claim until he filed the instant Rule 32 petition on December 30, 2008—1 year, 11 months, and 8 days after the Rule 32.2(c) time limitations had expired with regard to his attempted murder conviction.”
(Suppl. R. 39-40.) The circuit court correctly found that this claim was time-barred because it was raised more than one year after Woods’s time for filing an appeal from his attempted murder conviction expired. See Rule 32.2(c), Ala. R.Crim. P. Woods is due no relief on this claim.
.C.
Woods also argues that his appellate counsel was ineffective for failing to raise multiple issues on direct appeal. Woods merely recites a 2-page laundry list of 26 issues that he says appellate counsel was ineffective for failing to raise in his brief on direct appeal before this Court.
In pleading this claim, Woods merely pleaded the following:
*1148 “In this case, appellate counsel was plainly ineffective in failing to raise a number of meritorious issues in Mr. Woods’s appellate brief that, if raised, would have required the reversal of Mr. Woods’s conviction and sentence. Specifically, appellate counsel failed to raise on appeal the following issues: the improper admission the misdemeanor warrant for Mr. Woods arrest (Section IV. A.); the improper admission of Mr. Woods’s conduct toward police officers on other occasions (Section IV.C.); the inadequate and confusing limiting instruction given regarding prior bad acts evidence (Section IV.E.); the failure to change the venue of Mr. Woods’s trial due to extensive publicity (Section V); the failure to adequately instruct the jury on the specific intent necessary for a conviction of capital murder (Section VI); the improper severance of Mr. Woods’s trial from Kerry Spencer’s (Section VII); prosecutorial misconduct in closing argument by attempting to shift the burden of proof to Mr. Woods to prove his innocence (Section VIII); the failure to instruct the jury on the lesser included offense of manslaughter (Section IX); the State’s illegal use of peremptory strikes on the basis of race (Section X); the improper admission of victim impact evidence during the guilt phase (Section XI); the improper admission of prejudicial double hearsay (Section XIII); the improper admission of hearsay from police dispatch tapes (Section XIV); the improper admission of prejudicial hearsay statements from an unidentified individual (Section XV); the improper admission of hearsay statements from Mr. Woods’s co-defendant (Section XVI); the failure to ensure a complete and accurate record of the proceedings (Section XVII); the improper admission of gruesome, cumulative and highly prejudicial photographs (Section XVIII); the trial judge’s failure to re-cuse himself (Section XIX); the prejudicial presence of police officers in the courtroom throughout the trial (Section XX); the improper admission of testimony from a purported handwriting expert (Section XXI); the failure to strike the jury from a random sampling of prospective jurors called for jury service (Section XXII); the unconstitutional double counting of a factor making the offense capital as an aggravating circumstance (Section XII); the improper admission of the opinion of the victim’s family members about the appropriate sentence (Section XXIII); the improper introduction of victim impact evidence as rebuttal of mitigation witnesses (Section XXIV); the failure to instruct the jury on the process of weighing the aggravating and mitigating circumstances at the sentencing phase (Section XXV); the improper consideration of a letter purportedly written by Mr. Woods to Stacy Sellers at the judge sentencing (Section XXVI); and the failure to find uncontra-dicted mitigating evidence (Section XXVII). Mr. Woods has elsewhere asserted the merits of these claims and specifically incorporates those claims by reference.”
(C.R.450-51.)
When summarily dismissing this claim, the circuit court stated:
‘Woods’s conclusory allegations that he was denied effective assistance of appellate counsel are insufficient to raise a cognizable IAC [ineffective-assis-' tance-of-counsel] claim. For example, in paragraph 219 of his petition, Woods contends that ‘appellate counsel was ineffective in failing to raise a number of meritorious issues in Mr. Woods’s appellate brief that, if raised, would have required the reversal of Mr. Woods’s conviction and sentence.’ Woods follows this sentence with a lengthy list of as *1149 sorted issues, none of which is supported by specific facts. This assertion simply does not state a proper claim for relief. Instead, his ‘claim’ consists only of bare allegations and speculative, con-clusory statements. Further, the fact that Woods incorporates by reference other claims set forth in this petition does not render his IAC claims sufficiently pleaded. As noted above, incorporating by reference facts from one claim to another does not lower Rule 32’s pleading requirements. Here, even with the incorporation of facts from other claims in his petition, Woods has failed to plead specific facts sufficient to show that counsel’s performance was deficient or that, but for this allegedly deficient performance, the result in Woods’s case would have been different.
“Woods’s claims of IAC on appeal do not contain legal argument and specific factual support sufficient for a court to determine, based on the face of the petition, whether he is entitled to' relief, assuming the facts pleaded to be true. Accordingly, they are insufficiently pleaded and fail to state a valid claim for relief.”
(Suppl.C.R.94-95.)
To adequately plead a claim that counsel was ineffective for failing to raise certain issues on direct appeal, the petitioner must do more than merely recite a laundry list of issues that he or she says should have been raised. See Carruth v. State, 165 So.3d 627, 647 (Ala.Crim.App.2014). Also, the sections in Woods’s petition that are referenced in the above-cited quote are sections in the petition in which Woods argued the substantive issues concerning each claim of ineffective assistance of trial counsel. However, in this section of Woods’s postconviction petition, Woods was arguing that his appellate counsel was ineffective. Therefore, Woods had the added burden of pleading specific facts as to how he was prejudiced by appellate counsel’s failure to raise the above-cited 26 issues. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). Woods failed to plead the full facts in regard to this claim; therefore, it was correctly summarily dismissed. See Rule 32.6(b), Ala. R.Crim. P.
Moreover, on direct appeal, this Court addressed and found no error in the following issues, some of which are cited above: that the testimony concerning the computerized search for Woods’s name was admissible, that there was no error in the admission of collateral bad-act evidence, that the evidence was sufficient to support Woods’s convictions and to establish Woods’s guilt based on the accomplice-liability doctrine, that evidence from the victim’s widow about the appropriate sentence was appropriate in rebuttal, and that based on the record Woods was not denied the effective assistance of counsel at sentencing.
Also, in its order dismissing Woods’s petition, the circuit court specifically found that there was no merit to the following claims: that the circuit court erred in severing his case from that of his codefen-dant’s, that the prosecutor committed misconduct in its closing arguments, that the circuit court erred in admitting improper victim-impact evidence at the guilt phase, that the circuit court engaged in double counting in sentencing Woods’s to death, that the circuit court erred in admitting prejudicial photographs of the victims, and that the circuit court improperly constructed the strike list. We agree with the circuit court’s findings in regard to this claim.
Furthermore,
“[ajppellate counsel is presumed to exercise sound strategy in the selection of issues most likely to afford relief on appeal. Pruett v. Thompson, 996 F.2d *1150 1560, 1568 (4th Cir.1993), cert. denied, 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993). One claiming ineffective appellate counsel must show prejudice, i.e., the reasonable probability that, but for counsel’s errors, the petitioner would have prevailed on appeal. Miller v. Keeney, 882 F.2d 1428, 1434 and n. 9 (9th Cir.1989).”
Thomas v. State, 766 So.2d 860, 876 (Ala.Crim.App.1998).
The circuit court correctly summarily dismissed this claim because Woods failed to plead how he was prejudiced by appellate counsel’s failure to raise any of the 26 issues on direct appeal. See Rule 32.6(b), Ala. R.Crim. P. Woods is due no relief on this claim.
VII.
Woods next argues, that the circuit court erred in summarily dismissing his petition and relying on the State’s answer to support the dismissal. Specifically, Woods argues that the circuit court’s order contains the.same “adversarial zeal” condemned by the Alabama Supreme Court in Ex parte Scott, [Ms. 1091275, March 18, 2011] — So.3d —(Ala.2011).
“From a practical standpoint, we appreciate the need for allowing a trial court the flexibility to adopt the State’s proposed order when denying or dismissing a postconviction petition.” See Jackson v. State, 133 So.3d 420, 469 (Ala.Crim.App.2009). “While the practice of adopting the state’s proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous.” Bell v. State, 593 So.2d 123, 126 (Ala.Crim.App.1991). However, the Alabama Supreme Court has cautioned a reviewing court considering an order that adopts a proposed order drafted by the State. The Supreme Court cautioned;
“[A]ppellate courts must be careful to evaluate a claim that a prepared order drafted by the prevailing party and adopted by the trial court verbatim does not reflect the independent and impartial findings and conclusions of the trial court. In Bell v. State, 593 So.2d 123 (Ala.Crim.App.1991)—the case the Court of Criminal Appeals quoted in Ingram [v. State, 51 So.3d 1094 (Ala.Crim.App.2006) ] for the ‘clearly erroneous’ standard of review—the Court of Criminal Appeals observed:
“ ‘The trial court did adopt verbatim the proposed order tendered by the state; however, from our review of the record, we are convinced that the findings and conclusions are those of the trial court. The record reflects that the trial court was thoroughly familiar with the case and gave the appellant considerable leeway in presenting evidence to support his claims.’
“Bell, 593 So.2d at 126 (emphasis added). The undisputed facts in the present case obviously prevent a similar conclusion here.
“We are forced by the nature of the errors present in the June 8 order to reverse the judgment of the Court of Criminal Appeals. In the simplest terms, the patently erroneous nature of the statements regarding the trial judge’s ‘personal knowledge’ and observations of Ingram’s capital-murder trial undermines any confidence that the trial court’s findings of fact and conclusions of law are the product of the. trial judge’s independent judgment and that the June 8 order reflects the findings and conclusions of that judge.”
Ex parte Ingram, 51 So.3d 1119, 1124-25 (Ala.2010).
*1151 The next year in Ex parte Scott, [Ms. 1091275, March 18, 2011] — So.3d — (Ala.2011), the Supreme Court considered the validity of a circuit court’s wholesale adoption of the State’s answer as its final order denying Scott’s postconviction petition; the court stated:
“Here, we do not even have the benefit of an order proposed or ‘prepared’ by a party; rather the order is a judicial incorporation of a party’s pleading as the ‘independent and impartial findings and conclusions of the trial court.’ Ex parte Ingram, 51 So.3d [1119] at 1124 [ (Ala.2010) ]. The first and most fundamental requirement of the reviewing court is to determine ‘that the order and the findings and conclusions in such order are in fact those of the trial court.’ Id. at 1124. The trial court’s verbatim adoption of the State’s answer to Scott’s Rule 32 petition as its order, by its nature, violates this Court’s holding in Ex parte Ingram.”
— So.3d at —.
More recently, in affirming the circuit court’s adoption of the State’s proposed order in Ex parte Jenkins, 105 So.3d 1250 (Ala.2012), the Alabama Supreme Court explained its earlier holdings in Ex parte Ingram and Ex parte Scott and stated:
“Crucial to Jenkins’s argument that the trial judge signed the proposed order without reading it carefully and without verifying its contents is his contention that the trial judge signed the order within hours of receiving it. This contention is based on Jenkins’s ‘belief that the earliest the trial judge could have seen the proposed order would have been Tuesday, November 25, 2008, the date the order was signed in Ash-ville, because, as explained above, the trial judge was sitting in Pell City the previous day. Also crucial to Jenkins’s argument is his contention that the trial judge had not reviewed the records from his prior trial and Rule 32 proceedings. Neither of these crucial contentions to Jenkins’s argument are founded upon facts contained in the record, and they amount to only speculation and conjecture. Nothing in the record indicates when the trial judge received the proposed order or where he was'sitting on November 24 and 25, 2008. Additionally, nothing in the record indicates that the trial judge did not review the transcripts from Jenkins’s prior proceedings. It is well settled that this Court cannot consider , arguments founded on matters not contained in the record. Etherton v. City of Homewood, 700 So.2d 1374 (Ala. 1997).
“The circumstances of this case differ from the circumstances presented in Ex parte Ingram and Ex parte Scott. In both of those cases it was clear from evidence before this Court that the orders signed by the trial court were not the product of the trial court’s independent judgment. In Ingram, that fact was clear from the statements contained in the order regarding the trial judge’s ‘personal knowledge’ and observations of Ingram’s capital-murder trial when the trial judge signing the proposed Rule 32 order did not preside over Ingram’s capital-murder trial. In Ex parte Scott, that fact was clear from the materials before this Court, which contained the State’s responsive pleading adopted by the trial court as its order. In this case, however, there is nothing definitive in the record or on the face of the order that indicates that the order is not the product of the trial court’s independent judgment.”
Jenkins, 105 So.3d at 1259-60.
Here, the circuit court’s order dismissing Woods’s postconviction petition clearly reflects that it was the product of the circuit court’s “independent judgment.” Most obvious is the fact that the State’s *1152 amended answer was 113 pages long and the circuit court’s order was 80 pages long. Although the order does incorporate large portions of the State’s answer, it contains none of the obvious inaccurate findings the Supreme Court condemned in Ex parte Ingram. Nor was it a verbatim adoption of the State’s answer the Supreme Court condemned in Ex parte Scott. We have carefully reviewed the circuit court’s order and find nothing to suggest that the order was anything but the product of the circuit court’s own reasoned and independent judgment. See Ex parte Jenkins, supra.
For the foregoing reasons, we affirm the circuit court’s summary dismissal of Woods’s postconviction petition challenging his capital murder convictions and sentence of death.
AFFIRMED.
KELLUM, BURKE, and JOINER, JJ., concur.
WINDOM, P.J., recuses herself.

. Woods’s codefendant, Kerry M. Spencer, was also convicted of capital murder and was sentenced to death. His conviction was ultimately affirmed on direct appeal. See Spencer v. State, 58 So.3d 215 (Ala.Crim.App.2008). *1130 This Court recently affirmed the circuit court’s denial of Spencer’s postconviction petition attacking his convictions and sentence of death. See Spencer v. State, 201 So.3d 573 (Ala.Crim.App.2015).

, Woods did not appeal his attempted-murder conviction.

. This Court may take judicial notice of our previous records of Woods’s direct appeal. See Hull v. State, 607 So.2d 369, 371 (Ala.Crim.App.1992).

. Woods raised issues in his postconviction petition that are not argued in his brief to this Court. "We will not review issues not listed and argued in brief.” Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995). "[C]laims presented in a Rule 32 petition but not argued in brief are deemed abandoned.” Ferguson v. State, 13 So.3d 418, 436 (Ala.Crim.App.2008).

. Woods cites a 2007 brief filed by the State of Alabama in the United States Supreme Court in the case of Barbour v. Allen, 551 U.S. 1134, 127 S.Ct. 2996, 168 L.Ed.2d 707 (2007), in which the State said: " 'An inmate is simply to check from the list any ground that he feels applies to his case and to summarize the basic facts pertinent to each claim.’ ’’ (Woods’s brief, at pp. 17-18.)

. When Spencer was called to testify at Woods’s trial he invoked the Fifth Amendment and refused to testify. The circuit court allowed Spencer’s testimony from his own trial to be read into evidence.

. When- this issue was discussed at trial, the circuit court correctly stated that there was no evidence to support an instruction on any lesser-included offenses. (Trial R. 1656.)

. The record shows that Woods called Travis Dumas to testify. Dumas said that he was a doorman at the apartment that Woods and Spencer shared and that they sold drugs out of the house. He said that Woods and Spencer "kept it even swapping it up” when people came to the apartment to purchase drugs so that "nobody got a leg up on anybody.” (Trial R. 1515.)

. The Alabama Supreme Court in Ex parte Dunn, 514 So.2d 1300 (Ala.1987), recognized that it was per se ineffective assistance of counsel for an appellate attorney to fail to file a brief "on a [defendant's] first appeal as of right.”